**In the Matter of the ADOPTION OF SMR, a minor child:**

**MVC and SC, Appellants (Petitioners),**

v.

**MB, Appellee (Respondent).**

**No. C–98–7.**

Supreme Court of Wyoming.

June 25, 1999.

Michael K. Shoumaker, Sheridan, WY., Representing Appellants

Jan Flaharty, Family Law Office, Sheridan, WY., Representing Appellee

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

HILL, Justice.

At the request of the natural parents, appellants MVC and SC (the Guardians) became the legal guardians for SR, a minor child, and served in this crucial capacity for approximately three and one-half years. The Guardians then petitioned to adopt SR with the consent of SR's natural father. However, SR's natural mother objected. After a hearing, the district court denied the Guardians' petition, finding that SR's natural mother had not willfully abandoned SR. The Guardians claim the evidence is insufficient to support the district court's decision, and that the district court erred in failing to consider Mother's lack of contribution to the financial support of the child as a separate basis on which to grant their petition. Finding no abuse of discretion in the district court's determination, we affirm.

## ISSUES

Appellants present a single issue for review:

Did the District Court Err By Failing to Terminate the Parental Rights of [MB][?]

Appellee MB (Mother) responds with the following issues:

A. Did the District Court abuse its discretion in finding that there was not clear and convincing evidence to justify terminating Appellee's parental rights on the grounds of willful abandonment, pursuant to Wyo. Stat. § 1–22–110(a)(iii)?

B. Did the District Court abuse its discretion by failing to consider whether Appellee's parental rights should be terminated pursuant to Wyo. Stat. § 1–22–110(a)(iv) for willful failure to contribute to the support of the child?

## FACTS

SR was born in November of 1991. MB (Mother) was 18 years old, unmarried, and living with Father. The three lived in the same household until February of 1993, when Father joined the military. In April of 1993, Mother accepted a job which required her to travel out of the state. Due to Father's assignment overseas and the travel requirements of Mother's job, Mother and Father

determined that SR should live with the Guardians, Father's aunt and uncle. To facilitate the arrangement, the parents stipulated to the transfer of SR's legal guardianship, which was so ordered in July of 1993. When Mother returned to Sheridan to sign the guardianship documents, she was terminated from her job. Although Mother remained in Sheridan as a consequence, she did not attempt to alter the guardianship arrangement.

According to Mother, the parties agreed that she would forward any of the court-ordered child support payments made by Father to the Guardians. Mother received three child support payments from Father in 1993 but retained the funds for her personal use. Mother also testified that the Guardians agreed to call her if the child needed anything.

In January of 1994, Mother filed a petition to terminate the guardianship, but the proceeding was stayed because Father had not been notified. Frustrated with the delay, Mother withdrew her petition and subsequently moved to North Carolina in July of 1994. She returned to Sheridan in February of 1995 and later contacted an attorney to seek advice on re-establishing custody of the child. However, no action was taken as a result of this consultation.

In February of 1997, Mother relocated to Nevada, where she now lives with her current husband and their child. Since stipulating to the guardianship in 1993, Mother has had intermittent personal and telephone contact with the child, primarily during SR's visits with her parents. She has not contributed to SR's financial support, and the Guardians have made no request that she do so.

In June of 1997, the Guardians filed a petition for adoption. Father provided written consent, but Mother refused and filed an answer in opposition to the adoption. One month later, Mother countered with a petition to revoke the guardianship. On June 12, 1998, the district court held a bifurcated hearing which separated the evidence relating to the petition for adoption and the evidence regarding Mother's petition to terminate the guardianship. At the conclusion of the hearing, the district court denied both petitions. The district court concluded that the Guardians had failed to present clear and convincing evidence that Mother willfully abandoned SR, but determined that the guardianship should remain in place while providing for an increase in Mother's visitation with SR. The Guardians timely appealed the district court's denial of their petition for adoption.

## STANDARD OF REVIEW

The power to grant or deny a petition for adoption is within the discretion of the trial court. *Matter of Adoption of BGH*, 930 P.2d 371, 377 (Wyo.1996); *Matter of Adoption of GSD*, 716 P.2d 984, 988 (Wyo. 1986). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria." *Mintle v. Mintle*, 764 P.2d 255, 257 (Wyo.1988) (quoting *Martin v. State*, 720 P.2d 894, 897 (Wyo. 1986)). "In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably have concluded as it did." *Matter of Adoption of BGH*, 930 P.2d at 377–78 (quoting *Matter of Adoption of CCT*, 640 P.2d 73, 76 (Wyo.1982)). In the context of alleged abuse of discretion, the assessment of the circumstances in the case

> is tantamount to an evaluation of whether the evidence is sufficient to support the decision of the district court. In review of the evidence, we accept the successful party's submissions, granting them every favorable inference fairly to be drawn and leaving out of consideration conflicting evidence presented by the unsuccessful party.

*Basolo v. Basolo*, 907 P.2d 348, 353 (Wyo. 1995).

## DISCUSSION

The issue on appeal is whether the district court abused its discretion in applying the provisions of Wyo. Stat. Ann. § 1–22–110(a)(iii) and (iv). These sections provide in relevant part:

> (a) [T]he adoption of a child may be ordered without the written consent of a parent or putative father ... if the court

finds that the putative father or the non-consenting parent or parents have:

. . . .

(iii) Willfully abandoned or deserted the child; or

(iv) Willfully failed to contribute to the support of the child for a period of one (1) year immediately prior to the filing of the petition to adopt and has failed to bring the support obligation current within sixty (60) days after service of the petition to adopt[.]

Wyo. Stat. Ann. § 1–22–110(a)(iii) and (iv) (Michie 1997). When an adoption proceeding is contested by a nonconsenting parent, the statute must be strictly construed. "Every reasonable intendment is made in favor of the nonconsenting parent's claims." *Matter of Adoption of GSD*, 716 P.2d 984, 988 (quoting *Matter of Adoption of CCT*, 640 P.2d 73, 74–75 (Wyo.1982) and *Matter of Adoption of Voss*, 550 P.2d 481, 485 (Wyo.1976)). Strict construction is necessary because an adoption will result in the termination of the fundamental parental rights of a nonconsenting parent. *Matter of Adoption of BGH*, 930 P.2d at 375, 377.[1]

█ As used in the context of the statute, the term "willfully" means "intentionally, knowingly, purposely, voluntarily, consciously, deliberately, and without justifiable excuse, as distinguished from carelessly, inadvertently, accidentally, negligently, heedlessly or thoughtlessly." *Matter of Adoption of CJH*, 778 P.2d 124 (Wyo.1989); *ALT v. DWD*, 640 P.2d 73 (Wyo.1982). In order for a willful abandonment of a child to occur, there must be clear and convincing evidence of "an actual intent to terminate the parental ties and a purpose to relinquish parental ties." *In re Adoption of Female Child X*, 537 P.2d 719, 721–22 (Wyo.1975).

█ Here, Mother remained in infrequent, but continuing, contact with the child throughout the time of the guardianship. Furthermore, Mother had initiated proceedings to terminate the guardianship on one occasion prior to the filing of the petition for adoption and later sought advice regarding the restoration of her custody of the child. Based on this evidence, the trial court concluded:

I'm not condoning the way she acted, the things that she did or the things that she did not do. I'm just merely making a finding that there's not clear and convincing evidence of abandonment; therefore, the petition for adoption is denied at this time.

We must agree. Given the record before the district court, there is no abuse of discretion in finding that the Guardians failed to clearly and convincingly show an actual intent to terminate parental ties.

█ In the alternative, the Guardians contend that their petition must be granted on the basis that Mother willfully failed to financially contribute to the support of the child pursuant to Wyo. Stat. Ann. § 1–22–110(a)(iv). They argue that, despite the pleadings and the evidence presented at the hearing, the trial court "ignored the issue" and denied the petition solely on the issue of abandonment. A willful failure to contribute to a child's support can constitute a termination of rights under this statute. *Matter of Adoption of G.A.R.*, 810 P.2d 113 at 118 (Wyo.1991). However, when a petitioner invokes this basis for adoption without consent, Wyo. Stat. Ann. § 1–22–110(b) (Michie 1997) requires the pleadings to contain "a clear and concise statement of the consequences of the respondent's failure to bring the support ob-

---

1. In *Matter of Adoption of BGH*, 930 P.2d 371, 375 (Wyo.1996), Justice Thomas noted on behalf of the Court, "In addition to providing for the termination of parental rights for the reasons articulated in Wyo. Stat. § 14–2–309, the legislature has provided for the termination of parental rights through the adoption procedure." Prior to this decision, Justice Brown authored *Matter of Adoption of SLS and CRS*, 808 P.2d 207, 209 (Wyo.1991), wherein the Court commented, "W.S. 1–22–110 does not provide for termination of parental rights[.]"

To clarify any perceived conflict between these cases, we point out that these statements are dicta. In *SLS*, Justice Brown was simply being technically precise; while in *BGH*, Justice Thomas was simply stating the practical reality of what occurs through the adoption procedure in the case of a non-consenting parent or putative father who has failed to provide support for a year's period before the adoption petition was filed. However, the holdings in both cases are compatible and provide sound precedent for our holding in this case.

ligation current[.]" This requirement is a logical precedent for the second consideration found in Wyo. Stat. Ann. § 1–22–110(a)(iv), which requires the nonconsenting parent to bring her support obligation current within 60 days after service of the petition.

In this case, the Guardians' petition alleged: "Petitioners have been the sole means of support for said minor since the guardianship was created and that neither the natural mother or father have contributed to the support of said minor." There is no indication of the amount Mother must submit in order to bring her obligation current, nor is there a clear statement of the consequences of failing to do so. In addition, Guardians' counsel made the following opening statement:

> Your honor, . . .˙ Pursuant to Wyoming Statute 1–22–110 . . . we are claiming in this case there has been an abandonment, willful abandonment and some neglect in the past and that the child was deserted and left. And it has been almost five years now with minimal contacts.
>
> According to what I've been able to delineate from the case law, there is a clear and convincing standard. And as the Court is, I'm sure, aware, we are willing to proceed at this time.

Given the Guardians' failure to conform their pleadings with the statutory requirements, and the affirmative statements to the district court that they were proceeding on the basis of abandonment, the trial court did not err in failing to directly address Wyo. Stat. Ann. § 1–22–110(a)(iv) in its decision.

 Moreover, we do not agree that the district court failed to consider the Mother's willful failure to contribute financially. The nonconsenting parent must not only fail to contribute to the child's support, but that failure must be willful. *Matter of Adoption of G.A.R.*, 810 P.2d at 116. The district court noted that it considered the things that Mother "did not do," which implicitly includes the failure to contribute to SR's support. There is no question that Mother did not contribute to SR's support. However, the Guardians and Mother had an agreement relating to her financial contribution. The first part of the agreement was for Mother to forward the child support payments made by Father. There is no evidence that Father sent child support payments to Mother in the year immediately preceding the filing of the adoption petition. The second part of the agreement anticipated that the Guardians would inform Mother if the child was in need of anything, which was not done.

This situation may be distinguished from prior cases where we held that a willful failure to support existed. For example, in *G.A.R.*, the Mother specifically asked the nonconsenting putative father for assistance, which the father denied. *Matter of Adoption of G.A.R.*, 810 P.2d at 118–119. In *Matter of Adoption of CCT*, 640 P.2d 73, 74, the father was under a court order to provide support. In this case, there was no request for assistance, nor was there a court order identifying Mother's contribution. We do not, by this decision, abandon the principle that every parent has a duty to contribute to the support of his or her child, whether ordered by a court or not. *Matter of Adoption of G.A.R.*, 810 P.2d at 115. In fact, we reaffirm it. However, we do not find clear and convincing evidence that Mother **willfully** failed to financially contribute to the support of the child in this case, and, therefore, we will not disturb the ruling of the district court.

## CONCLUSION

The district court did not abuse its discretion in determining that the Guardians failed to present clear and convincing evidence that Mother's actions or inaction fell within the provisions of Wyo. Stat. Ann. § 1–22–110(a) (Michie 1997). The Order denying the Guardians' Petition for Adoption is affirmed.