2002 WY 76

## In the Matter of the ADOPTION OF TLC.

TOC, Appellant (Respondent),

v.

TND and DLD, Appellees (Petitioners).

No. C–00–5.

Supreme Court of Wyoming.

May 21, 2002.

DaNece Day Koenigs and Daniel B. Bailey of Lubnau, Hand & Bailey LLC, Gillette, Wyoming, Representing Appellant. Argument by Ms. Koenigs.

Michael N. Patchen, Gillette, Wyoming, Representing Appellees. Argument by Mr. Patchen.

Before LEHMAN, C.J.; GOLDEN and KITE, JJ.; and SPANGLER, D.J., Ret.

LEHMAN, Chief Justice.

[¶ 1] Appellant TOC (Father) appeals from the district court's order granting the adoption of his seven-year-old daughter, TLC to TND (Stepfather) without Father's consent. We hold that the record does not demonstrate clear and convincing evidence to support either of the statutory factors relied upon by the district court to grant this adoption without the consent of Father. Accordingly, we reverse.

## ISSUES

[¶ 2]   Father presents the following issues for our analysis:

A.   Did the District Court err in failing to strictly construe the provisions of W.S. § 1–22–101 *et seq.* and grant every reasonable intendment in favor of the father contesting the adoption of his child?

B.   Was the District Court's finding that the father had willfully failed to pay child support pursuant to W.S. § 1–22–110(a)(iv) and (ix) an abuse of discretion when the failure to pay child support was a result of the father's incarceration?

C.   Was the District Court's finding that the father had abandoned the child pursu-

ant to W.S. § 1–22–110(a)(iii) an abuse of discretion when there was no intent to abandon the child?

D. Without specific statutory authority, can the District Court find a parent's incarceration sufficient grounds for entering an adoption pursuant to W.S. § 1–22–110?

## FACTS

[¶ 3] The record before this court contains no transcript of the hearing in this case. Additionally, Father has improperly invoked W.R.A.P. 3.03 by failing to follow its requirements.[1] However, for the limited purpose of generating this contextual section of our opinion, we will utilize portions of the parties' agreed upon statement of proceedings as otherwise supported by the record.

On June 4, 1992, TLC was born to Father and DLD (Mother). Since her birth, the child has continuously lived with Mother. Mother and child resided with Father for various periods from the time of the child's birth until the spring of 1997. During one of these periods, Mother and Father purchased a home together. Mother and child have lived with petitioner Stepfather since May of 1997.

[¶ 5] In December of 1995, Father was sentenced to serve a term of three to six years in the Wyoming State Penitentiary for delivering a controlled substance. He was released on probation and ordered to serve a forty-five day split sentence on weekends. In April of 1996, his probation was revoked, and he was placed in the state penitentiary. He was transferred to the Campbell County Community Corrections Facility in August of 1996 where he stayed until March of 1997.

In July of 1998, Father's parole was revoked and he was again placed in the state penitentiary until August of 1999 when he was again released to the corrections facility where he resided at the time of trial.

[¶ 6] Father's paternity and parental obligations were judicially established by a court order that was entered on September 15, 1995. The paternity decree required Father to pay $192 per month in child support. In December 1999, Father owed $9,636.50 in child support arrearages. During periods of incarceration, Father was under thirty-five to sixty-five percent wage withholding for his child support obligations and while imprisoned failed to seek modification of his child support obligation.

[¶ 7] In addition to the periods Mother and Father lived together, Father saw the child approximately twenty times from her birth until the spring of 1997. Since 1997, Father has purchased three gifts for the child including a bicycle and a clock. While in the penitentiary Father mailed his daughter three letters and made monthly collect calls to her lasting from two to five minutes.

[¶ 8] Stepfather and Mother filed a Petition for Adoption October 14, 1999, alleging that Father had abandoned the child and had willfully failed to provide court-ordered child support. Father objected to the petition. A hearing was conducted, and the district court entered its Final Decree of Adoption over Father's objection on January 21, 2000. This timely appeal followed.

## STANDARD OF REVIEW

[¶ 9] This court reviews orders of adoption under an abuse of discretion stan-

---

1. The parties submitted an agreed statement of the proceedings. However, this attempted statement fails to comply with W.R.A.P. 3.03 in two regards. First, W.R.A.P. 3.03 can be utilized only to provide a settled statement of a proceeding if a transcript is unavailable. A transcript is unavailable only if the proceeding was not stenographically or otherwise recorded or if the recording is somehow lost or destroyed. 16A Charles A. Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 3d* § 3956.3, at 341 (3d ed.1999). The record before us does not reflect whether the hearing was recorded, stenographically or otherwise. Father merely states in his Notice of Appeal that "no transcript

of this proceeding was made." This statement is insufficient to invoke the use of W.R.A.P. 3.03. If the proceeding was recorded, it is mandatory for Father to have a transcript made and present to this court at least those sections of the transcript pertinent to the issues on appeal.

The second problem with the process attempted by Father to provide a settled statement of the proceedings is that the statement, although signed by the attorneys for the parties, was never presented to the district court for its approval. W.R.A.P. 3.03 clearly requires trial court approval of a statement before it can properly be considered settled and become part of the record.

dard. We succinctly stated this standard in *Matter of Adoption of SMR*, 982 P.2d 1246, 1248 (Wyo.1999):

> The power to grant or deny a petition for adoption is within the discretion of the trial court. *Matter of Adoption of BGH*, 930 P.2d 371, 377 (Wyo.1996); *Matter of Adoption of GSD*, 716 P.2d 984, 988 (Wyo. 1986). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria." *Mintle v. Mintle*, 764 P.2d 255, 257 (Wyo. 1988) (quoting *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)). "In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably have concluded as it did." *Matter of Adoption of BGH*, 930 P.2d at 377–78 (quoting *Matter of Adoption of CCT*, 640 P.2d 73, 76 (Wyo.1982)). In the context of alleged abuse of discretion, the assessment of the circumstances in the case

> > is tantamount to an evaluation of whether the evidence is sufficient to support the decision of the district court. In review of the evidence, we accept the successful party's submissions, granting them every favorable inference fairly to be drawn and leaving out of consideration conflicting evidence presented by the unsuccessful party.

(Quoting *Basolo v. Basolo*, 907 P.2d 348, 353 (Wyo.1995).)

### DISCUSSION

[¶ 10] It is within the following constitutional framework that we are constrained to review Father's case. First and foremost, we recognize that the right to familial association is a fundamental right protected by both the Wyoming and the United States Constitutions. *DS v. Dep't of Public Assistance & Social Servs.*, 607 P.2d 911, 918 (Wyo.1980); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1213, 31 L.Ed.2d 551 (1972) (integrity of the family unit protected by the due process clause of the Fourteenth Amendment, equal protection clause of the Fourteenth Amendment, and the Ninth Amendment). Accordingly, adoption statutes are strictly construed when the proceeding is against a nonconsenting parent, and every reasonable intendment is made in favor of that parent's claims. *In re Adoption of Female Child X*, 537 P.2d 719, 723 (Wyo.1975); *In re Adoption of Narragon*, 530 P.2d 413, 414 (Wyo.1975). This court has explored the substantial policies supporting that tenet in *Matter of Adoption of Voss*, 550 P.2d 481, 485 (Wyo.1976):

> [T]he earliest and most hallowed of the ties that bind humanity, in all countries considered sacred, is the relationship of parent and child. Therefore, parents have the first and natural right to their children. A decree of adoption tears asunder forever the parent-child relationship and for all legal and practical purposes, that child is the same as dead to the parent affected. The parent has lost the right to ever again see the child or even know of his whereabouts. Courts cautiously guard the parent-child relationship.

[¶ 11] Adoptions can occur without the consent of a parent only under certain statutorily delineated circumstances. Because of the fundamental liberty interest at stake, the applicable statutes must be strictly construed. Moreover, the party requesting adoption bears the burden of proving the existence of at least one of the statutory factors by clear and convincing evidence. *In re Adoption of Strauser*, 65 Wyo. 98, 196 P.2d 862, 867 (Wyo.1948) ("When a parent refuses to consent, and the matter in controversy is whether he had abandoned the child so as to dispense with the necessity of his consent, the burden of proof is on the party seeking to justify the adoption on that ground, and the courts often say that the evidence to show abandonment must be clear and convincing."); *In re Adoption of Female Child X*, 537 P.2d at 722 ("Petitioners, seeking to establish an exception and facts which would justify the absence of parental consent, have the burden of this proof.")

[¶ 12] Subsequent to this court's decisions regarding the standard and burden of proof, the U.S. Supreme Court has also recognized the clear and convincing standard as the constitutionally mandated minimum standard for the termination of parental rights. In *Santosky v. Kramer*, 455 U.S. 745, 753–54,

102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982)[2] the Court determined that:

> The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

[¶ 13] The Court next reasoned that, "[t]he function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" 455 U.S. at 754–55, 102 S.Ct. at 1395 (quoting *Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979)). It ultimately held: "In parental rights termination proceedings, the private interest affected is commanding; the risk of error from using a preponderance standard is substantial; and the countervailing governmental interest favoring that standard is comparatively slight. Evaluation of the three *Eldridge* factors compels the conclusion that use of a 'fair preponderance of the evidence' standard in such proceedings is inconsistent with due process." 455 U.S. at 758, 102 S.Ct. at 1397.[3]

■ [¶ 14] Turning now to our review of the instant case, as a consequence of Father's failure to comply with W.R.A.P. 3.03, this court cannot consider the agreed statement of proceedings submitted by the parties or any facts contained therein in rendering our decision. *Jackson v. State*, 624 P.2d 751, 756 (Wyo.1981). We must, therefore, refer to the district court's findings of fact in its order for the purposes of this discussion. Under the circumstances of this appeal, all facts as found by the district court are required to be taken as adequately supported by the evidence presented at the hearing. *G.C.I. Inc. v. Haught*, 7 P.3d 906, 911 (Wyo. 2000) ("When no transcript has been made of trial proceedings, this court accepts the trial court's findings as being the only basis for deciding the issues which pertain to the evidence.") Thus, the question before this court is whether the district court's findings of fact support its ultimate legal conclusion that the requirements of the applicable statutory subsections have been satisfied by clear and convincing evidence. Pursuant to the order, the district court granted the adoption without the consent of Father under two statutory sections, Wyo. Stat. Ann. § 1–22–110(a)(iii) and (a)(ix).

### *Abandonment*

■ [¶ 15] Section 1–22–110(a)(iii) provides for the grant of adoption over the objection of a nonconsenting parent if the nonconsenting parent has "willfully abandoned or deserted the child." The district court determined:

> Pursuant to Wyoming Statute § 1–22–110(a)(iii), this court finds that [Father] has willfully abandoned or deserted the child pursuant to the following facts: a) [Father's] contact with the minor child has been sporadic over her life time. b) The testimony indicates that [Father] did not attempt to exercise regular visitation. c) His lack of contact with the minor child was a result, among other items, [sic] the lack of reasonable notice given to the petitioners to see the child. d) While in prison,

---

**2.** The Court held that determination of the precise burden equal to or greater than the "clear and convincing" standard is a matter of state law properly left to state legislatures and state courts.

**3.** Though *Santosky v. Kramer* involved state-initiated neglect proceedings, as this court has held, the requirement for clear and convincing evidence supporting termination is equally applicable to the parental rights terminations involved in stepparent-initiated adoption proceedings because the same fundamental liberty interest of the natural parent in the relationship with the child is involved and because the State, through its courts, acts to sever a parental tie.

he called collect to the minor child once a month with the calls being 2 to 5 minutes in length. Further, he sent the minor child 3 letters and 3 gifts since 1997. The Court can disregard such incidental contacts. e) [Father] had the opportunity to establish a relationship in the life of the child, but he never availed himself of the rights and responsibilities of a parent nor developed any meaningful systematic way to have contact with the child and as a result has willfully abandoned and deserted the child. f) The Court will not put the good intentions of a parent before the best interests of a child. The law does not allow a second chance to a parent who has not met the demands of parenting.

The facts as related in the order do not clearly and convincingly support a finding of willful parental abandonment. The trial court stated that Father had sporadic contact with his daughter over her lifetime. The trial court also found that Father failed to exercise regular visitation. Neither of these findings supports a determination that Father willfully abandoned his daughter. A certain degree of parental inattention, neglect or temporary absence is not enough to establish willful abandonment. *In re Adoption of Female Child X*, 537 P.2d at 721; *In re Adoption of Strauser*, 196 P.2d at 868. Infrequent but continuing contact with a child is sufficient to indicate an intent to maintain parental ties and prevent a finding of willful abandonment. *Matter of Adoption of SMR*, 982 P.2d at 1249.

[¶ 16] A finding of "abandonment" requires "an actual intent manifested to sever parental relations." *Matter of Adoption of Voss*, 550 P.2d at 487. In this case, the facts in the order reflect that Father attempted to maintain contact with his daughter. This is implicit in the finding that one reason for the lack of contact between Father and his daughter was Father's failure to give reasonable notice to the petitioners (appellees) to see the child. It is explicit in the finding that Father made monthly telephone calls to his daughter while he was in prison. The trial court dismissed the telephone calls as "incidental" contact and thus irrelevant. However, we think that such consistent contact cannot be disregarded, especially under

a proper statutory construction of Wyo. Stat. § 1-22-110(a)(iii). We note the legislature has not made specific provision for incidental contacts to be disregarded under this section as it has in the termination provision of Wyo. Stat. § 14-2-309(a)(i). Therefore, the better analytical approach would be to focus on the definitions of "willful" and "abandonment" as established by this court. All contact should be analyzed within the context of these definitions.

[¶ 17] In the instant case, the monthly telephone calls and occasional letters indicate an attempt by Father to maintain contact with his daughter to the best of his ability while incarcerated. We do not hold that incarceration tolls a nonconsenting parent's familial obligations; however, when determining "abandonment," the trial court should consider whether an incarcerated nonconsenting parent, unable to fulfill the customary parental duties of an unrestrained parent, has nonetheless pursued the opportunities and options which may be available to carry out such duties to the best of his or her ability. *See generally,* Annotation, *Parent's Involuntary Confinement, or Failure to Care for Child as Result Thereof, as Permitting Adoption Without Parental Consent,* 78 A.L.R.3d 712 (1977) and cases cited therein.

[¶ 18] The district court also concluded that it would "not put the good intentions of a parent before the best interests of the child." However, Father's intent was the crux of the issue before the district court on the subject of abandonment. Because of the fundamental nature of parental rights, the issue of the requirement of parental consent to an adoption is determined without regard for the best interests of the child. *In re Adoption of Female Child X*, 537 P.2d at 722; *Matter of Adoption of RHA*, 702 P.2d 1259, 1264 (Wyo.1985) (best interests of child irrelevant until the consent issue had been resolved).

[¶ 19] Presumably, the "good intentions" referred to by the court are Father's good intentions to maintain contact with his daughter. The facts as found in the order indicate that Father attempted to maintain contact, and at least while incarcerated did

maintain consistent contact, with his daughter. Because there is no evidence, clear and convincing or otherwise, of an actual intent to terminate the parental ties and a purpose to relinquish parental ties, the finding of abandonment must be reversed.

### *Willful nonpayment of court-ordered support*

[¶ 20] The district court also granted the petition for adoption without the consent of Father pursuant to § 1–22–110(a)(ix). Though enacted in 1992, this subsection has not yet been subject to interpretation by this court.[4] Additionally, our research discloses that no other state has adopted a comparable provision, thus there is no persuasive authority which might aid in our statutory analysis. Nevertheless, our rules of statutory construction are well established. "Statutory interpretation is a question of law, so our standard of review is de novo. If the conclusion of law is in accordance with the law, we affirm it; if it is not, we correct it." *May v. May*, 945 P.2d 1189, 1191 (Wyo.1997) (citation omitted). In interpreting statutes, our primary consideration is to determine the legislature's intent. *State ex rel. Motor Vehicle Div. v. Holtz*, 674 P.2d 732, 736 (Wyo.1983). All statutes must be construed in pari materia; and in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. *Id.* at 735. *Holtz* explained our statutory construction rules:

> If the language is sufficiently clear, there is no need to resort to rules of construction. When the language is not clear or is ambiguous, the court must look to the mischief the statute was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conclusions of law, and other prior and contemporaneous facts and circumstances, making use of the accepted rules of construction to ascertain a legislative intent that is reasonable and consistent.

*Id.* at 736; *see also Fontaine v. Board of County Comm'rs of Park County*, 4 P.3d 890, 894–95 (Wyo.2000).

[¶ 21] Wyo. Stat. Ann. § 1–22–110(a)(ix) provides:

> (a) In addition to the exceptions contained in W.S. 1–22–108 the adoption of a child may be ordered without the written consent of a parent ... if the court finds that the putative father or the nonconsenting parent or parents have:
>
> . . .
>
> (ix) Willfully failed to pay a total dollar amount of at least seventy percent (70%) of the court ordered support for a period of two (2) years or more and has failed to bring the support obligation one hundred percent (100%) current within sixty (60) days after service of the petition to adopt.

[¶ 22] Unfortunately, subsection (ix) has not been crafted with the linguistic precision desired in a statute that substantially affects a fundamental liberty interest of the citizens of this state. Initially, we note that it fails to reference a focal point for the period of consideration comprising "two years or more" of willful nonpayment of child support. The district court interpreted the statute to mean "two years or more" *immediately prior to the filing of the petition to adopt.* We agree that this is the proper interpretation and by doing so ensure that subsection (ix) is applied consistently with subsections (iv) and (v) which reference the filing of the petition to adopt as the appropriate focal point.

[¶ 23] Other courts likewise have construed adoption statutes in this manner determining that such constructions are proper because they are reasonable and because termination of one's parental rights is a drastic action requiring that statutes like the present one be narrowly construed. *See e.g., Sale v. Leachman*, 218 Ga. 834, 131 S.E.2d 185 (1963); *In re Adoption of Sharp*, 197 Kan. 502, 419 P.2d 812 (1966); *Petition of R.H.N.*, 673 P.2d 805, 806 (Colo.App., 1983) (appeal after remand 678 P.2d 1070 (1984)), *aff'd* 710 P.2d 482 (Colo.1985). The Kansas Supreme Court, in interpreting a statute that included

---

4. Nor has this statutory subsection been subject to constitutional challenge.

the phrase for "two consecutive years" but likewise referenced no focal point, reasoned thusly:

If the statute were construed to mean that any two-year period in which a parent failed or refused to assume parental duties was sufficient to dispense with consent, a parent, who through a change of heart or circumstances had attempted to reassume such duties after the two-year period, would be placed in the difficult position of proving there had been in fact repentance. While there appears to be authority permitting a repentant parent to show a resumption of parental obligations and thus reacquire the right to object to adoption, we believe that by limiting the two-year period of consideration to that next preceding the filing of the petition a natural parent is placed in a more advantageous position to uphold his rights. In other words, the fulfillment of parental duties and obligations, is, in our thinking, more accurately gauged by the facts found to exist during the two-year period next preceding the initiation of the adoption proceedings.

In light of the foregoing rules of statutory construction, and the inclination of the courts to uphold the rights of the natural parent, we are of the opinion that it was reasonably intended by the legislature that the failure or refusal to assume the duties of a parent for two consecutive years . . . refers to the period next preceding the filing of a petition for adoption.

*In re Adoption of Sharp,* 419 P.2d at 814–15 (citation omitted.).

■■■ [¶ 24] The next portion of subsection (ix) we must interpret is its language, "[w]illfully failed to pay a total dollar amount of at least seventy percent (70%) of the court ordered support for a period of two (2) years or more." It is conceivable this language might be interpreted to mean that the nonconsenting parent must have willfully failed to pay at least 70% of his monthly support payment for a period of at least twenty-four consecutive months; or alternatively, it could be interpreted to mean that the total dollar amount of his court-ordered support for a period of at least two years is aggregated and it is then determined whether he has willfully failed to pay at least 70% of that total dollar amount.

[¶ 25] To illustrate: if Parent has court-ordered support of $100 per month, if interpreted in the first manner, Parent may forfeit his right to withhold consent to the adoption of his child only if he fails to pay, at a minimum, $70 every month for at least twenty-four months. If interpreted in the second manner, Parent may forfeit his right if he willfully fails to pay, at a minimum, 70% of $2,400, or $1,680, for at least the two-year period. Ultimately, we think the second interpretation was the one intended by the legislature as demonstrated by its use of the term "total dollar amount." The inclusion of this phrase would seem to indicate that an aggregation of the monthly court-ordered support for at least a two-year period is contemplated.

■■■ [¶ 26] We further necessarily conclude that the term "willfully" continues to modify the remaining portion of the sentence *including* the term "for a period of two (2) years or more." The plain language of the statute provides that the petitioner may prevail only if he has shown by clear and convincing evidence that the nonconsenting parent has *willfully failed* to pay the court-ordered support *and* that such willfulness has occurred "for a period of two years or more"[5] *and* that the parent has failed to bring the support obligation one hundred percent (100%) current within sixty (60) days after service of the petition to adopt. Stated another way, if within the two-year period the parent's nonpayment of child support is not proven as willful, a petitioner cannot meet his burden to prove the parent's willful nonpayment has occurred for the requisite period of time. Consequently, a petition for adoption pursuant to this subsection must fail. To hold otherwise would excise the language "for a period of two years or more" from the sentence in question and relieve

5. If the petitioner chooses to allege nonpayment of court-ordered support for a period of time greater than two years, then he also must prove the nonpayment was willful for the entire time so chosen.

petitioners of their burden to prove two years of continual willful nonpayment of court-ordered child support. The plain language of the statute adopted by the legislature and the rule of strict statutory construction that where two interpretations of the statute are reasonably possible, that interpretation which is most protective of the rights of the natural parent is to be selected further support this interpretation. As the Georgia Supreme Court noted in *Sale v. Leachman:*

> The statute here construed imposes a harsh and severe penalty upon the father not abiding by and obeying the mandate of a decree or order previously entered requiring him to pay a designated amount periodically for the support of his minor children. The penalty is to take from his bosom his own children, blood of his blood and bone of his bone, and without his consent give them to another. Our laws abhor penalties and forfeitures, ... and a law imposing a penalty must be strictly construed.

*Sale,* 131 S.E.2d at 188 (citations omitted).

[¶ 27] Finally, it should be obvious without extensive elaboration that the penalty of the forfeiture of one's parental rights cannot be imposed on the basis of strict liability through the application of a crude monetary equation. Simple proof of a parent's failure to pay 70% of his or her court-ordered support for a period of two years or more immediately prior to the filing of the petition, is not, as a matter of law, sufficient to satisfy either the requirements of the statute itself or the protections guaranteed to the parent by the U.S. and Wyoming Constitutions. Clearly, by inclusion of the modifying term "willfully" the statute draws a distinction, as it must, between the parent who though financially able to pay his court-ordered child support is unwilling to do so, and the parent who though willing to pay his court-ordered child support is financially unable to do so. "A natural parent's failure to support his or her child does not obviate the necessity of the parent's consent to the child's adoption, where the parent's financial condition is such that he or she is unable to support the child." 2 Am.Jur.2d *Adoption*

§ 88 (1994). *See Owens v. Griggs,* 151 Ga. App. 730, 261 S.E.2d 463 (1979); *Leithold v. Plass,* 505 S.W.2d 376 (Tex.Civ.App.1974); *In re Adoption of Masa,* 23 Ohio St.3d 163, 492 N.E.2d 140 (1986); *see generally* Annotation *Natural Parent's Indigence Resulting from Unemployment or Underemployment as Precluding Finding that Failure to Support Child Waived Requirement of Consent to Adoption* 83 A.L.R.5th 375 (2000) and cases cited therein; and Annotation *Natural Parent's Indigence as Precluding Finding that Failure to Support Child Waived Requirement of Consent to Adoption—Factors Other than Employment Status* 84 A.L.R.5th 191 (2000) and cases cited therein.

[¶ 28] Moreover, this court has defined willfully in the context of Wyo. Stat. Ann. § 1–22–110 as "intentionally, knowingly, purposely, voluntarily, consciously, deliberately, and *without justifiable excuse,* as distinguished from carelessly, inadvertently, accidentally, negligently, heedlessly or thoughtlessly." *Matter of Adoption of CCT,* 640 P.2d 73, 76 (Wyo.1982); *Matter of Adoption of CJH,* 778 P.2d 124, 127 (Wyo.1989); *Matter of Adoption of SMR,* 982 P.2d at 1249. While analyzing an analogous provision, § 1–22–110(a)(iv) in *Matter of Adoption of CCT,* we said: "Appellant's failure to contribute to the support of the children was not accidental, inadvertent or *financially impossible*— at least not during the year immediately prior to the filing of the petitions for adoption. The failure was deliberate and voluntary. It was done consciously and intentionally and without justifiable excuse. It was not due to oversight or *lack of means to make contributions." Id.* at 76. (emphasis added).

[¶ 29] In the case at bar, applying Wyo. Stat. Ann. § 1–22–110(a)(ix), the district court in its order stated:

8. Under the Paternity Decree, [Father] is to pay $192.00 per month in child support. Through December 1999, [Father] should have paid $13,292.00 in child support, and currently owes of that amount $9,636.50.

9. The Court specifically finds [Father] willfully failed to pay at least 70% of the court ordered child support for a two year

period prior to the filing of this petition and that he has not brought his support 100% current within 60 days after being served the petition as set forth in W.S. § 1–22–110(a)(ix). This finding of willful failure to pay is supported by the following facts: a) [Father] for the year prior to the petition made minimal support contributions. However, since he entered the CAC in August 1999, in Gillette, Wyoming, his support has been reasonable and substantial. b) His failure to pay child support from October 8, 1998, through October 8, 1999, is a consequence of incarceration which was his own making and which was willful. c) [Father] was released on probation after he was sentenced in 1995. His probation was revoked in 1996. He was then placed on probation in 1997, failed to make child support payments in 1997 and was held in contempt of court. His probation under a criminal case was revoked and he was incarcerated to the Wyoming State Penitentiary in July 1998. d) [Father] had the opportunity to avoid incarceration and pay support, but failure to pay support was a willful failure, as his acts which resulted in his sentence and probation revocation were willful acts.

[¶ 30] The petition for adoption was filed October 14, 1999, alleging two years of nonpayment of at least 70% of court-ordered child support. Thus, the period of time under consideration is from October 13, 1997, to October 14, 1999. The district court found: "[Father] for the year prior to the petition made minimal support contributions. However, since he entered the CAC in August 1999, in Gillette, Wyoming, his support has been reasonable and substantial.... His failure to pay child support from October 8, 1998, through October 8, 1999, is a consequence of incarceration which was his own making and which was willful."

[¶ 31] Thus, the district court found that from October 8, 1998, through October 8, 1999, Father was incarcerated yet still during that time "made minimal support contribu-

tions." Evidence in the record before us on review also supports this finding. The district court further found that since August of 1999, Father's support had been "reasonable and substantial." [6]

[¶ 32] As found by the district court, following his release from prison, and prior to the filing of the petition to adopt, Father made two child support payments well over the amount of his court-ordered support. As a consequence, the petitioner Stepfather cannot show that the statute has been satisfied because any willful nonpayment by Father has not occurred "for a period of two years or more" prior to the filing of the petition for adoption. *See Matter of Adoption of A.F.M.*, 960 P.2d 602, 604–05 (Alaska 1998) (vacating the adoption decree because the lower court implicitly misinterpreted the statute and therefore miscalculated the period of nonsupport as a year and a day rather than eleven months.)

[¶ 33] Furthermore, the district court's reliance on Father's incarceration as providing the necessary grounds for dispensing with his consent to the adoption is clearly erroneous. We herein expressly disapprove the reasoning used to decide that Father's nonpayment of child support was willful. The court determined that "[Father's] failure to pay child support from October 8, 1998, through October 8, 1999, is a consequence of incarceration which was his own making and which was willful." It concluded that Father, "had the opportunity to avoid incarceration and pay support, but failure to pay support was a willful failure, as his acts which resulted in his sentence and probation revocation were willful acts."

[¶ 34] The statute requires that a parent must have "willfully failed to pay" support. The act that must be willful is the failure to pay support. Incarceration, standing alone, does not provide the direct intent necessary to constitute willful failure to pay under the pertinent statute. Otherwise, the granting of an adoption without the consent of a parent can be based upon a mere desire

---

6. The record indicates that Father made the following payments.

| | |
|---|---|
| 9/24/1999 | $238.79 |
| 10/8/1999 | $264.98 |
| 10/22/1999 | $293.58 |
| 11/5/1999 | $192.63 |
| 11/15/1999 | $ 96.73 |

to compound the sentence for a parent's past crime. The statutory language clearly does not support such a result.[7]

[¶ 35] In *Matter of Adoption of V.A.J.*, 660 P.2d 139 (Okla.1983), the Oklahoma Supreme Court reviewed the propriety of the granting of an adoption against the consent of an incarcerated parent on the statutory grounds of willful failure to contribute to the support of the minor. The Oklahoma Supreme Court reversed the order granting the adoption, finding that the incarcerated parent did not have the financial ability to pay any support. In discussing the requirement that any failure to pay must be "willful," the court stated:

> The statutory language ... is clearly devoid of any explicit legislative intent that imprisonment for any crime or for any duration afford a ground for dispensing with a parent's consent. The statute requires willful failure or refusal to contribute. Imprisonment cannot be equated with willful failure to contribute to the child's support. The natural father is not to be deemed willful when, as here, incarceration prevents his making any contribution to the child's support. The proper inquiry to address in this case is whether the natural parent intentionally incapacitated himself for the purpose of avoiding the duty imposed by law; if so, then imprisonment may constitute justification for dispensing with his consent in the adoption proceeding. The evidence here does not support an inference that the father's commission of a felony, and subsequent incarceration therefor, was for the purpose of avoiding his support obligation. Thus his incapacity to earn income and pay support may not be deemed "willful."

*Id.* at 141. (Footnotes omitted).

[¶ 36] In so holding, we do not imply that incarceration provides total justification for nonpayment of child support. A parent must always pay child support according to his or her financial ability. *Glenn v. Glenn*, 848 P.2d 819, 821 (Wyo.1993) (the legislature intended child support obligations to be paid where reasonably possible, including out of funds received by an incarcerated parent). Rather, the focus must remain on the parent's intent and ability to pay. The courts should look at whether the parent has demonstrated, through whatever financial means available to him, that the parent has not forgotten his statutory obligation to his child. *See Baker v. Nicholson*, 158 Ga.App. 267, 279 S.E.2d 717 (1981) (overruled on other grounds) (reversing and remanding case for trial court finding that failure to support or communicate with child was without justifiable cause where father by reason of his incarceration was involuntarily prevented from supporting his children and involuntarily restricted in his communication with his children. "[W]e would be remiss in the exercise of judicial economy to fail to note that there is a paucity of evidence to support a finding that appellant was without justifiable cause in failing to support or communicate with his children. To hold otherwise would subject every prisoner without independent means to the loss of his parental rights." At 718.)

[¶ 37] Accordingly, the focus must be on Father's ability to provide court-ordered support, and, if he lacked the ability, the reason therefore. The order under review does contain affirmative findings regarding payments by Father for at least one year. The trial court found that Father made minimal support contributions for the year preceding the filing of the petition. The trial court concluded that Father was unable to make full child support payments during this period of time because of his incarceration. No other reason for nonpayment of the full amount of court-ordered support is given. There is no indication in the order under review that

---

7. This court rejected similar reasoning in *Wood v. Wood*, 964 P.2d 1259 (Wyo.1998). There the district court refused to modify an incarcerated father's child support obligation finding that the father had "voluntarily" committed a criminal offense and had thus become "voluntarily underemployed" for the purposes of Wyo. Stat. Ann. § 20–6–302(b). In reversing the judgment we held, "[a]lthough this statute does not explain how to determine whether or not a parent is voluntarily underemployed, it illustrates what types of situations qualify a parent as being voluntarily underemployed. The legislature obviously did not contemplate voluntarily committing a crime when it enacted this statute." *Id.* at 1266.

Father's acts resulting in his incarceration were in any way motivated by an intent to avoid payment of court-ordered child support. The court went on to specifically find that Father has made "reasonable and substantial" contributions since his release to CAC in August 1999. This suggests that the lack of payment of the full amount of court-ordered child support for a period of one year within the statutorily required "period of two years or more" was the result of a lack of ability to pay rather than a deliberate repudiation of parental responsibilities. *See also In re Adoption of S.E.B.*, 257 Kan. 266, 891 P.2d 440 (1995) (stating that under applicable statute, courts are required to take into consideration the period of time that the father was incarcerated and unable to support the children and finding father's incarceration for seven of the required twenty-four months meant under the circumstances the trial judge had improperly granted the adoption).

[¶ 38]   For the foregoing reasons, we hold that the district court improperly interpreted and applied Wyo. Stat. Ann. § 1–22–110(a)(ix). We reverse the court's grant of adoption to petitioner pursuant to this subsection because, under the facts as found by the trial court, Stepfather cannot, as a matter of law, satisfy the requirements of the statute that he show by clear and convincing evidence that Father willfully failed to pay 70% of court-ordered child support for a period of two or more years prior to the filing of the petition to adopt.

### CONCLUSION

[¶ 39]   The district court abused its discretion in granting Stepfather's petition to adopt over the objection of the child's natural father. The court misinterpreted the applicable statutory subsections in determining that clear and convincing evidence supported Stepfather's claims pursuant to Wyo. Stat. Ann. § 1–22–110(a)(iii) and (ix). Accordingly, the court's order granting the adoption is vacated and this case is reversed.