2006 WY 130

In the Matter of the Termination
of Parental Rights to CS,
Minor Child.

LS a/k/a LA, Appellant (Respondent),

v.

Johnson County Department of Family
Services, Appellee (Petitioner).

In the Matter of the Termination
of Parental Rights to TS,
Minor Child.

LS a/k/a LA, Appellant (Respondent),

v.

Johnson County Department of Family
Services, Appellee (Petitioner).

Nos. C–05–16, C–05–17.

Supreme Court of Wyoming.

Oct. 13, 2006.

Rehearing Denied Nov. 7, 2006.

Representing Appellant: Jan Flaharty of Sheridan, Wyoming.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; and Jill E. Kucera, Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] LS appeals a jury verdict terminating her parental rights to two of her minor children contending it was not established by clear and convincing evidence that she had abused or neglected the children and that she was denied due process when an employee of the Johnson County Department of Family Services (DFS) failed to provide her with transportation to the termination hearing. We affirm.

## ISSUES

[¶ 2] LS puts forward two issues for appellate review:

A. Whether it was established by clear and convincing evidence that LS abused or neglected her children within the meaning of "abuse" and "neglect," as those terms are defined by Wyo. Stat. §§ 14–3–202(a)(ii) and (vii).

B. Whether LS was deprived of her due process rights to a meaningful opportunity to be heard, guaranteed under Article 1, § 6, of the Wyoming Constitution and the Fifth and Fourteenth Amendments of the United States Constitution, when the Department of Family Services refused at the last moment to transport LS to the termination hearing.

## FACTS

[¶ 3] LS is the natural mother of CS and TS who were born on February 13, 2003, and June 9, 2000, respectively. Both children were born at home and neither birth certificates nor social security numbers were ever obtained for either of them. In October of 2003, LS and the children moved from Montana to Buffalo, Wyoming, where they lived in a one-room cabin with LS's father and his wife. On December 19, 2003, DFS and law enforcement personnel went to the cabin to investigate after LS's father reported that LS was abusing the children. LS's father reported that LS would place CS, then eight months old, in a fleece sleeping bag, tie the

top closed with a handkerchief, and leave the child inside whenever he cried. He also reported that LS would pinch the fingers of TS as a form of punishment until TS screamed; she would hold CS over the potty for extended periods of time in an attempt to train him at the age of eight months; and she did not provide adequate nutrition for the children. In addition, there were allegations that LS refused to seek medical care for the children or provide the care prescribed and recommended by a doctor. The children were taken into protective custody at that time.

[¶ 4] LS agreed to leave the children in foster care and a case plan with the goal of reuniting the family was established. LS failed to follow the case plans. She did not maintain stable residences—moving seventeen times between January of 2004 and March of 2005—or employment and paid no child support. LS only made about forty percent of scheduled visitations with the children. On February 23, 2005, DFS filed a petition to terminate LS's parental rights alleging that LS had abused and neglected the children, reasonable efforts at rehabilitation and reunification had been unsuccessful, and that the children's health and safety would be jeopardized if custody was returned to LS. It was also alleged that the minor children would be in foster care under the responsibility of the State of Wyoming in excess of fifteen of the previous twenty-two months.

[¶ 5] Trial before a jury was scheduled to commence on Monday, August 15, 2005. On Sunday, LS had contacted a DFS employee about receiving a ride from her home in Sheridan to the trial in Buffalo. The employee initially agreed to provide the ride but she contacted LS later that same day and informed her that DFS could not provide transportation. The employee cited safety concerns if the trial went adversely for LS as the reason. LS was unable to arrange alternative transportation and she was not present during the first day of the trial. No continuance was requested and the jury was informed about the reason for LS's absence. LS appeared for the second and third days of

* Chief Justice at time of expedited conference.

trial and during her testimony, she explained the reason for her absence to the jury.

[¶ 6] At trial, LS's father described LS's conduct with the children that led to his decision to contact DFS. There was testimony from a mental health professional that LS suffered from a narcissistic personality disorder that prevented her from focusing on the needs of the child emotionally or developmentally and that the children's health and safety would be at risk if they were returned to her. Testimony from several counselors and social workers who observed LS interact with the children during rehabilitation efforts agreed with that conclusion after observing emotional abuse and other inappropriate behavior by LS. In her testimony, LS did not generally deny any of the conduct attributed to her but defended it as appropriate parenting behavior and asserted her competence to raise the children and disputed the characterizations that the health and safety of the children would be jeopardized if she retained custody. After hearing the witnesses and evidence of both parties, the jury returned a verdict finding that LS's parental rights to both children should be terminated pursuant to the provisions of Wyo. Stat. Ann. § 14–2–309(a)(iii) and (a)(v) (LexisNexis 2005).[1] A Judgment and Decree terminating LS's parental rights to CS and TS was entered on October 3, 2005. LS appeals.

### STANDARD OF REVIEW

[¶ 7] When we review the granting of a petition to terminate parental rights, our review is pursuant to the following standards:

Due to the tension between the fundamental liberty of familial association and the compelling state interest in protecting the welfare of children, application of statutes for termination of parental rights is a matter for strict scrutiny. *TR v. Washakie County Dep't of Pub. Assistance & Soc. Servs.*, 736 P.2d 712, 715 (Wyo.1987). As part of this strict scrutiny standard, a case for termination of parental rights must be established by clear and convincing evidence. Wyo. Stat. Ann. § 14–2–309(a) (Michie 1997); *In Interest of JG*, 742 P.2d 770, 773 (Wyo.1987); *D.S. v. Dep't of Pub. Assistance & Soc. Servs.*, 607 P.2d 911, 919 (Wyo.1980). Clear and convincing evidence is that kind of proof that would persuade a trier of fact that the truth of the contention is highly probable. *Matter of GP*, 679 P.2d 976, 982 (Wyo.1984). Rigorous though this standard may be, we apply our traditional principles of evidentiary review when a party challenges the sufficiency of the evidence supporting termination. *Matter of SYM*, 924 P.2d 985, 987 (Wyo.1996). Thus, we examine the evidence in the light most favorable to the party prevailing below, assuming all favorable evidence to be true while discounting conflicting evidence presented by the unsuccessful party. *Id.; D.S. v. Dep't of Pub. Assistance & Soc. Servs.*, 607 P.2d at 919–20; *In Interest of JG*, 742 P.2d at 773. *In re ZKP*, 979 P.2d 953, 956 (Wyo.1999); see also *In re IH*, 2001 WY 100, ¶ 14, 33 P.3d 172, ¶ 14 (Wyo.2001); *Matter of TLC*, 2002 WY 76, 46 P.3d 863 (Wyo.2002).

*In re K.L.S.*, 2004 WY 87, ¶ 11, 94 P.3d 1025, 1027–28 (Wyo.2004) (quoting *SD v. Carbon County Department of Family Services (In re SED )*, 2002 WY 168, ¶ 5, 57 P.3d 1235, ¶ 5 (Wyo.2002)).

[¶ 8] LS also claims a denial of due process under Wyoming Constitution Article 1, § 6 and the Fifth and Fourteenth

---

1. **§ 14–2–309. Grounds for termination of parent-child relationship; clear and convincing evidence.**

   (a) The parent-child legal relationship may be terminated if any one (1) or more of the following facts is established by clear and convincing evidence:

   . . . .

   (iii) The child has been abused or neglected by the parent and reasonable efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating the family or the family has refused rehabilitative treatment, and it is shown that the child's health and safety would be seriously jeopardized by remaining with or returning to the parent.

   . . . .

   (v) The child has been in foster care under the responsibility of the state of Wyoming for fifteen (15) of the most recent twenty-two (22) months, and a showing that the parent is unfit to have custody and control of the child[.]

Amendments to the United States Constitution.

Wyo. Const. art. 1, § 6, provides that "[n]o person shall be deprived of life, liberty or property without due process of law." The similar provision found in the Fifth Amendment to the United States Constitution was made applicable to the states by the Fourteenth Amendment. "Notice and the opportunity to be heard are touch stones of this due process of law." *Pecha v. Smith, Keller & Associates,* 942 P.2d 387, 391 (Wyo.1997). The notice and hearing opportunity must be "appropriate to the nature of the case," and the opportunity to be heard must be " 'at a meaningful time and in a meaningful manner.' " *Jones v. Jones,* 903 P.2d 545, 548 (Wyo.1995) (quoting *Moore v. Board of Educ. of Fulton Public School No. 58,* 836 S.W.2d 943, 947 (Mo.1992), *cert. denied,* 507 U.S. 916, 113 S.Ct. 1270, 122 L.Ed.2d 666 (1993)). The party claiming an infringement of his right to due process has the burden of demonstrating both that he has a protected interest and that such interest has been affected in an impermissible way. *Meyer v. Norman,* 780 P.2d 283, 289 (Wyo.1989). The question is whether there has been a denial of fundamental fairness. *Id.*

*In re "H" Children,* 2003 WY 155, ¶ 38, 79 P.3d 997, 1008 (Wyo.2003).

## DISCUSSION

■ [¶ 9]   LS contends that there was no clear and convincing evidence sufficient to support termination of her parental rights as her conduct did not constitute "abuse" or "neglect" as those terms are statutorily defined. LS insists that she is simply being punished for her "unorthodox" parenting beliefs.

[¶ 10]   After reviewing the entire record and taking due consideration of the appropriate statutes, we conclude that the jury's determination is supported by clear and convincing evidence. Pursuant to § 14–2–309(a)(iii), three elements have to be shown by clear and convincing evidence before a parent's rights can be terminated: (1) the child has been abused or neglected by the parent; (2) reasonable efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating the family or the family has refused rehabilitative treatment; and (3) the child's health and safety would be seriously jeopardized by remaining with or returning to the parent. LS does not contest that the latter two elements were established; she only challenges whether or not there was abuse or neglect.[2]

[¶ 11]   By reference in Wyo. Stat. Ann. § 14–2–308(a)(i) and (a)(vi), the terms "abuse" and "neglect" are statutorily defined as:

"Abuse" means inflicting or causing physical or mental injury, harm or imminent danger to the physical or mental health or welfare of a child other than by accidental means, including abandonment, unless the abandonment is a relinquishment substantially in accordance with W.S. 14–11–101 through 14–11–109, excessive or unreasonable corporal punishment, malnutrition or substantial risk thereof by reason of intentional or unintentional neglect, and the

---

2.   The jury also found that LS's parental rights should be terminated pursuant to Wyo. Stat. Ann. § 14–2–309(a)(v) which has two elements: (1) the child has been in foster care under the responsibility of the state of Wyoming for fifteen of the most recent twenty-two months; and (2) the parent is unfit to have custody and control of the child. In a single paragraph in her brief at the end of her argument on the issue of sufficient evidence, LS briefly argues that there was no justification for the initial removal of the children from her custody because the conduct complained of did not constitute abuse or neglect. LS concludes that since there was no justification for removal, the time the children spent in State foster care should not have counted for purposes of termination under § 14–2–309(a)(v).

LS cites no authority for this proposition. The record suggests that LS in fact consented to the children's placement in foster care. Moreover, LS did not file any appeal from the dispositional hearing in the juvenile court that found that the children had been abused and neglected. LS may not challenge the validity of that order in this termination proceeding. *In re Adoption of CF,* 2005 WY 118, ¶ 30, 120 P.3d 992, 1003 (Wyo.2005). Given LS's failure to provide any cogent argument, we could summarily affirm the termination of LS's parental rights based on the jury's findings under § 14–2–309(a)(v). Nevertheless, given the importance of the rights at issue, we will address the substance of LS's argument that her conduct did not constitute abuse or neglect.

commission or allowing the commission of a sexual offense against a child as defined by law:

(A) "Mental injury" means an injury to the psychological capacity or emotional stability of a child as evidenced by an observable or substantial impairment in his ability to function within a normal range of performance and behavior with due regard to his culture;

(B) "Physical injury" means any harm to a child including but not limited to disfigurement, impairment of any bodily organ, skin bruising if greater in magnitude than minor bruising associated with reasonable corporal punishment, bleeding, burns, fracture of any bone, subdural hematoma or substantial malnutrition;

(C) "Substantial risk" means a strong possibility as contrasted with a remote or insignificant possibility;

(D) "Imminent danger" includes threatened harm and means a statement, overt act, condition or status which represents an immediate and substantial risk of sexual abuse or physical or mental injury.

Wyo. Stat. Ann. § 14-3-202(a)(ii) (LexisNexis 2005).

"Neglect" means a failure or refusal by those responsible for the child's welfare to provide adequate care, maintenance, supervision, education or medical, surgical or any other care necessary for the child's well being. Treatment given in good faith by spiritual means alone, through prayer, by a duly accredited practitioner in accordance with the tenets and practices of a recognized church or religious denomination is not child neglect for that reason alone[.]

Wyo. Stat. Ann. § 14-3-202(a)(vii) (LexisNexis 2005).

[¶ 12] LS's father testified that when CS was crying, LS would put the eight month old in a fleece sleep sack and then tie the opening shut with a handkerchief to prevent the child from getting out and would leave him inside for extended periods of time. When her father removed CS from the bag on one occasion, he observed that the child was hot and sweaty. He described how LS would punish TS by pinching his fingers until the child screamed in pain.

[¶ 13] The jury could reasonably conclude that placing an eight month old baby in a fleece bag and tying it shut placed the child in imminent risk of physical injury, and that pinching a child's fingers until he screamed in pain constituted a physical injury resulting from excessive or unreasonable corporal punishment. We cannot agree with LS's contention that, as a matter of law, this conduct was not "abuse" as those terms are defined by our statute.

[¶ 14] There was also evidence of neglect. There was evidence of inappropriate or inadequate nutrition: LS forced three-year-old TS to eat adult sized portions, while she underfed CS. There was evidence of inadequate medical care: LS's father testified that LS refused to seek medical care for TS despite his vomiting and high fever. After her father took the child to the emergency room, LS would not provide the care prescribed by the doctor. LS refused to obtain social security numbers for the children preventing them from getting public assistance for medical care. After the children were placed in foster care, the State had to obtain court orders to allow medical treatment for the children because of LS's refusal to approve the medical treatment. LS attempts to frame the issue of medical care as one of concern about the side effects of immunizations and the consequences of over-prescribing antibiotics. While those may be legitimate concerns, they do not explain LS's refusal to seek or allow medical care in the first instance or her refusal to follow prescribed care that did not involve immunization shots or taking antibiotics.

[¶ 15] Furthermore, failure to comply with a case plan can constitute evidence of neglect and support termination of parental rights. *In re K.L.S.*, ¶ 24, 94 P.3d at 1031–32 (see also *In re Termination of Parental Rights to IH, EBH v. Hot Springs Department of Family Services*, 2001 WY 100, 33 P.3d 172 (Wyo.2001); and *In the Interest of DG, WR v. Natrona County Department of Family Services*, 916 P.2d 991 (Wyo.1996)). LS did not comply with her

case plans: she did not maintain stable residences or employment, she paid no child support, and she made less than half of the scheduled visitations with the children.

 [¶ 16] The flaw in LS's view of the evidence is that her argument perceives each instance of abuse or neglect as an independent incident.

> [I]n the termination of parental rights, we must consider all of the factors, incidents and conditions that demonstrate neglect. [*MS v. Kuchera*, 682 P.2d 982, 988 (Wyo. 1984) ]. Rarely do we find a single condition or incident standing alone justifies termination. Instead, neglect is usually manifested by numerous incidents and conditions extending over a considerable length of time. *Id.*

*In re K.L.S.*, ¶ 16, 94 P.3d at 1029. Considering the evidence in the record in its entirety, there is clear and convincing proof sufficient to support the jury's findings of abuse and neglect.

 [¶ 17] In her second issue, LS contends that she was deprived of due process when DFS refused to transport her to the trial as they had initially promised. LS contends that she was unable to obtain alternative transportation in time and consequently missed the first day of trial. LS argues that DFS had provided her with transportation in the past and so she reasonably relied upon their representation that they would do so for the trial, and she claims prejudice because it led the jury to question her commitment to her children.

 [¶ 18] There was testimony that DFS would provide transportation in certain circumstances during attempts to reunify a family and that they did so for LS on occasion during that process. However, LS does not cite any authority that required DFS to provide her with transportation once the proceedings had progressed to the termination phase. Even assuming that DFS incurred some sort of obligation to LS, prejudice cannot be established under the facts of this case. LS did not request a continuance of the trial. The court explained the reason for LS's absence to the jury and LS herself related it to the jury when she testified later

in the trial. Furthermore, the jury verdict was supported by sufficient evidence. An error warrants reversal of a judgment only when it is prejudicial and affects a substantial right. *Smyth v. Kaufman*, 2003 WY 52, ¶ 29, 67 P.3d 1161, 1169–70 (Wyo.2003). To the extent any error occurred, it was harmless under the circumstances of this case.

### CONCLUSION

[¶ 19] The jury verdict terminating LS's parental rights to CS and TS is affirmed.