2004 WY 139

**Brandon Dean BLAKEMAN,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 03–89.**

Supreme Court of Wyoming.

Nov. 15, 2004.

Representing Appellant: Ken Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Senior Assistant Appellate Counsel. Argument by Mr. Roden.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director, PAP; and Sarah A. Rodrigues, Student Intern. Argument by Ms. Rodrigues.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Brandon Blakeman appeals from the sentence imposed by the district court after a jury found him guilty of soliciting or knowingly encouraging a person under the age of sixteen to engage in illicit sexual penetration or sexual intrusion. He claims his conviction should be reversed because there was not sufficient evidence presented at the trial to support the jury's verdict, the jury was incorrectly instructed on the definition of "solicit," the statute he was convicted under was unconstitutional, and he received ineffective assistance of counsel. We find no error warranting reversal in this case and, consequently, affirm Mr. Blakeman's conviction.

## ISSUES

[¶ 2] Mr. Blakeman articulates several issues on appeal:

*ISSUE I*

I. Whether there was insufficient evidence to convict appellant due to the fact that the state did not prove every essential element of the crime for which appellant was charged.

II. Whether the trial court committed fundamental error by failing to adequately instruct the jury on the legal definition of an essential element of the crime for which appellant was charged violating appellant's due process rights to a fair trial.

III. Whether Wyoming Statute § 14–3–104 violates due process guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 6, of the Wyoming Constitution because the statute is vague and generally fails to provide fair notice to citizens of their potential liability. The statute is also vague as applied in Mr. Blakeman's case.

IV. Whether appellant received effective assistance of trial counsel.

[¶ 3] The State phrases the issues as follows:

I. Was the evidence sufficient to permit the jury to find appellant guilty of the crime of soliciting or encouraging a child under 16 to engage ·in illicit sexual penetration or intrusion?

II. Did the district court commit fundamental error in instructing the jury on the definition of "solicit[?"]

III. Is Wyoming Statute § 14–3–104 violative of due process because it is unduly vague or fails to provide fair notice of the prohibited conduct?

IV. Was appellant denied effective assistance of trial counsel?

## FACTS

[¶ 4] In the summer of 2002, David Johnson lived in Gillette with his wife, their four-year old son, and his two stepdaughters—twelve-year old EG and thirteen-year old AG. Mr. Johnson became acquainted with Mr. Blakeman in July 2002, when they worked together on a drilling rig. Mr. Blakeman frequented the Johnson home, occasionally asking Mr. Johnson to transport him to various locations in Gillette in Mr. Johnson's vehicle. After working two weeks on the drilling rig, Mr. Blakeman was laid off. He subsequently secured employment at a restaurant. AG agreed to baby-sit Mr. Blakeman's infant son while he worked at the restaurant.

[¶ 5] On July 27, 2002, Mr. Blakeman was at the Johnson home on and off throughout the day. At one point Mr. Blakeman asked Mr. Johnson for a ride to a friend's home. Mr. Johnson said that he could not give Mr. Blakeman a ride at that time because he needed to find AG and her twelve-year old friend LN, who were out "running around with their friends." Mr. Johnson told Mr. Blakeman that he could use AG's bicycle for transportation.

[¶ 6] Later that evening, Mr. Blakeman called the Johnson home and spoke with twelve-year old EG. During their conversation, Mr. Blakeman told EG that he was trying to contact AG. He then questioned EG about AG's sexual history. Mr. Blakeman asked EG if she thought AG would have sex with him in exchange for money and what EG thought AG would do if he showed her his genitals. Mr. Blakeman then requested that EG tell AG to meet him at the restaurant where he worked so he could give AG the money he owed her for babysitting. AG and LN returned to the Johnson home a short time later, and EG relayed Mr. Blakeman's message to AG. AG and LN started to walk toward the restaurant, but about half-way there they encountered Mr. Blakeman, who suggested that they "go somewhere where the cops can't see us." They decided to go behind a nearby grocery store.

[¶ 7] Mr. Blakeman and the two girls sat down behind the store and talked. The conversation turned to sexual matters, and Mr. Blakeman asked them if they knew what a penis looked like. The girls did not answer his question, and he continued by saying, "So you wouldn't know what it would look like if I shoved it in your face?" AG then stated, "We're 12 or 13 years old. We don't need this." Despite AG's protestations, Mr. Blakeman continued with this line of inquiry. He asked the girls if they would ever consider having sex with a guy like him. LN responded, "No, because you're too old."

[¶ 8] LN mentioned to AG that her back hurt, and Mr. Blakeman offered to give her a back rub. LN lay down on the ground, and Mr. Blakeman rubbed her back. During the backrub, which lasted approximately thirty minutes, Mr. Blakeman pushed up LN's shirt and attempted to unhook her bra. He continued to ask the girls whether they would consider engaging in various sexual activities with him. Finally, AG said, "You're freaking me out. Come on [LN]. Let's go." Mr. Blakeman stated that LN "wants to stay here with me." Initially LN said that she would leave with AG, so AG moved to a bench in front of the grocery store to wait for LN. When LN did not join her, AG went home and told Mr. Johnson about the incident. He searched the area and discovered Mr. Blakeman and LN lying together behind the grocery store. Mr. Johnson confronted Mr. Blakeman and told him to stay away from his home and his family.

[¶ 9] A few days later, Mr. Johnson saw Mr. Blakeman near his home and again confronted him. Someone reported the altercation to the police. Mr. Johnson explained to the officer that he was upset with Mr. Blakeman over his conduct on the night of July 27. The State investigated the incident and charged Mr. Blakeman with one count of soliciting or knowingly encouraging a person under the age of sixteen (LN) to engage in illicit sexual penetration or sexual intrusion, in violation of Wyo. Stat. Ann. § 14–3–104 (LexisNexis 2003).

[¶ 10] After a two-day trial, the jury returned a verdict finding Mr. Blakeman guilty of soliciting a child under the age of sixteen to engage in illicit sexual intrusion and, in the alternative, finding him guilty of knowingly

encouraging a child under the age of sixteen to engage in illicit sexual intrusion. The district court entered a judgment on the jury verdict and sentenced Mr. Blakeman to serve a sentence of two to five years incarceration. Mr. Blakeman filed a timely notice of appeal.

## DISCUSSION

### 1. Sufficiency of the Evidence

[¶ 11] Mr. Blakeman tenders a three-fold challenge to the sufficiency of the trial evidence. He maintains that the State did not prove beyond a reasonable doubt that: (1) he knew LN was under the age of sixteen; (2) he knowingly encouraged LN to engage in sexual intrusion; or (3) he solicited LN to engage in sexual intrusion. In reviewing a claim that the trial evidence was insufficient to support a jury verdict, we apply the following standard of review:

> [W]e must determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. We do not consider conflicting evidence presented by the unsuccessful party, and afford every favorable inference which may be reasonably and fairly drawn from the successful party's evidence. We have consistently held that it is the jury's responsibility to resolve conflicts in the evidence. (citing *Wetherelt v. State*, 864 P.2d 449, 452 (Wyo.1993)). "We will not substitute our judgment for that of the jury, ... our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did." *Id.*

*Williams v. State,* 986 P.2d 855, 857 (Wyo. 1999) (some citations omitted). See also, *Simmons v. State*, 2003 WY 84, ¶ 28, 72 P.3d 803, ¶ 28 (Wyo.2003).

[¶ 12] Mr. Blakeman was convicted of violating § 14-3-104. That statute states, in pertinent part:

> [A]nyone who solicits ... or knowingly encourages anyone under the age of six-

teen (16) years to engage in illicit sexual penetration or sexual intrusion as defined in W.S. 6-2-301 is guilty of a felony, and upon conviction shall be imprisoned for a term not more than five (5) years.

The district court instructed the jury as follows:

> The elements of the crime of soliciting or encouraging a child to engage in illicit sexual intrusion, as charged in this case are:
>
> 1.  On or about the 28th day of July, 2002;
>
> 2.  In Campbell County, Wyoming;
>
> 3.  The defendant, Brandon Dean Blakeman;
>
> 4.  Knowing [LN] to be under the age of sixteen years;
>
> 5.
>
>    a.  Solicited or
>
>    b.  knowingly encouraged
>
> 6.  [LN], a child under the age of sixteen years, to engage in illicit sexual intrusion.
>
> If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.
>
> If, on the other hand, you find from your consideration of all of the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

[¶ 13] Mr. Blakeman claims that there was insufficient evidence for the jury to conclude that he knew LN was under sixteen years old[1]. The record does not, however, support his position. Mr. Johnson testified that he and Mr. Blakeman had visited about their families while they were working together on the drilling rig. Mr. Johnson stated that he told Mr. Blakeman that his stepdaughters were 12 and 13 years old. It is reasonable to infer that, since Mr. Blakeman knew AG was thirteen years old, he should have realized that her friend, LN, was close to the same age. AG confirmed that Mr.

---

1.  The State argues that the prosecution should not have been required to prove that Mr. Blakeman had knowledge that LN as under sixteen years old. Neither party objected to that aspect

of the instructions at the trial. Consequently, we are not compelled to address that argument on appeal.

Blakeman was aware of the girls' ages because when he asked them sexually suggestive questions, AG responded: "We're 12 or 13 years old. We don't need this." LN also testified she actually told Mr. Blakeman that she "was 12 going on 13." As Mr. Blakeman points out, there is evidence in the record that, contrary to LN's trial testimony, she initially told the police that she did not inform Mr. Blakeman of her age. Nevertheless, when we apply our standard of review to the trial evidence, we must conclude that a rational trier of fact could reasonably deduce that Mr. Blakeman knew LN was less than sixteen years old.

[¶ 14] Mr. Blakeman's second and third challenges to the sufficiency of the evidence concern the alternate theories of the crime set out in element five of Jury Instruction No. 6. The jury returned a verdict, finding Mr. Blakeman guilty on two alternative theories: (1) he knowingly encouraged LN to engage in illicit sexual intrusion; and (2) he solicited her to engage in illicit sexual intrusion. The alternative verdict complied with Wyoming precedent. See e.g., *Bush v. State*, 908 P.2d 963, 966 (Wyo.1995). Of course, the district court sentenced Mr. Blakeman for only one violation of § 14–3–104. Thus, if there was sufficient evidence to support either ground, then Mr. Blakeman's conviction must be affirmed. *Kenyon v. State*, 2004 WY 100, ¶ 15, 96 P.3d 1016, ¶ 15 (Wyo.2004).

[¶ 15] The trial evidence showed that Mr. Blakeman repeatedly asked LN and AG sexually suggestive questions and specifically asked if they would consider engaging in particular sexual acts with him. Mr. Blakeman encouraged the girls to go behind the grocery store with him so that law enforcement could not see them. He rubbed LN's back, pushed up her shirt, and attempted to unhook her bra. During the back rub, he continued to ask sexually suggestive questions. Thus, there was more than adequate evidence presented at the trial to support the jury's finding that Mr. Blakeman knowingly encouraged LN to engage in sexual intrusion. Compare, *White v. State*, 2003 WY 163, 80 P.3d 642 (Wyo.2003) (upholding a conviction under § 14–3–104 where the defendant made

statements similar to those made in this case but did not actually touch the victim).

[¶ 16] Moreover, although it is not necessary for us to consider the alternative verdict, we note that the same trial evidence also supported the jury's finding that Mr. Blakeman solicited LN to engage in sexual intrusion. The district court defined "solicit" for the jury as: "(1) to ask or seek earnestly or pleadingly, (2) to tempt or to entice someone to do wrong, (3) to approach for some immoral purpose."[2] Mr. Blakeman's words and conduct establish very clearly that he asked earnestly or pleadingly for twelve-year old LN to participate in various sexual acts with him, he tempted or enticed LN to do wrong by engaging in sexual acts, and/or he approached LN for the immoral purpose of engaging in sexual activities with her.

[¶ 17] Sufficient evidence existed for the jury to find Mr. Blakeman guilty beyond a reasonable doubt of each element of soliciting a minor under § 14–3–104. We will not, therefore, second-guess their guilty verdict.

**2. Jury Instruction**

[¶ 18] Mr. Blakeman argues that the district court committed a fundamental error when it incorrectly defined the term "solicit" in its instructions to the jury. As noted above, Jury Instruction No. 6 stated: "Solicit means (1) to ask or seek earnestly or pleadingly, (2) to tempt or to entice someone to do wrong, (3) to approach for some immoral purpose." Mr. Blakeman did not object to the instruction; consequently, we apply our plain error standard of review to his claim. Under the plain error standard, an appellant must establish that "a clear and unequivocal rule of law was violated in a clear and obvious way resulting in denial of a substantial right and material prejudice." *Vlahos v. State*, 2003 WY 103, ¶ 42, 75 P.3d 628, ¶ 42 (Wyo.2003); *Urbigkit v. State*, 2003 WY 57, ¶ 41, 67 P.3d 1207, ¶ 41 (Wyo.2003).

[¶ 19] As a practical matter, even if we were to find that the district court incorrectly defined "solicit" for the jury, Mr. Blakeman cannot show that he was prejudiced by the instruction. A reversal of Mr. Blake-

---

**2.** The propriety of the district court's instruction on the definition of "solicit" is addressed *infra*.

man's conviction for soliciting LN to engage in illicit sexual intrusion would have no real effect because the conviction for knowingly encouraging LN to engage in illicit sexual intrusion would still stand. Mr. Blakeman would, therefore, be subject to the same sentence even without the conviction on the "solicit" alternative. Since it is impossible for Mr. Blakeman to show that he was prejudiced by the district court's purported erroneous instructions, there is no plain error and, consequently, no basis for reversal.

■ [¶ 20] We do, however, feel it is beneficial to the development of the criminal law of this state to comment on the district court's definition of "solicit." In interpreting statutes, we apply the plain meaning of the words of the statute. *Bush v. State,* 2003 WY 156, ¶ 11, 79 P.3d 1178, ¶ 11 (Wyo.2003).

Black's Law Dictionary 1248–49 (5th ed.1979) defines solicit as follows:

Solicit. To appeal for something; to apply to for obtaining something; to ask earnestly; to asked for the purpose of receiving; to endeavor to obtain by asking or pleading; to entreat, implore, or importune; to make petition to; to plead for; to try to obtain; and though the word implies a serious request, it requires no particular degree of importunity, entreaty, imploration, or supplication. To awake or excite to action, or to invite. The term implies personal petition and importunity addressed to a particular individual to do some particular thing.

As used in the context of solicitation to commit a crime, the term means to command, authorize, urge, incite, request, or advise another to commit a crime.

The World Book Dictionary 1990 (Vol. 2 1977) defines "solicit" as:

1 to ask earnestly; try to get: The tailor sent out cards soliciting trade. SYN: request, beg .... 2 to influence to do wrong; tempt; entice: To solicit a judge means to offer him bribes. 3 to accost with immoral offers.

The jury instructions given by the district court in this case correctly recited relevant portions of the dictionary definitions.

[¶ 21] Other jurisdictions have also adopted legal definitions for "solicit," which incorporate portions of the dictionary definitions. The California Supreme Court ruled that "solicit" means: "To ask for with earnestness, to make petition to, to endeavor to obtain, to awake or excite to action, to appeal to, or to invite." *Aetna Bldg. Maintenance Co. v. West,* 39 Cal.2d 198, 246 P.2d 11, 15 (1952) (citations and emphasis omitted). In Illinois, "solicit" is statutorily defined as "to command, authorize, urge, invite, request, or advise another to perform an act" *People v. Arndt,* 351 Ill.App.3d 505, 286 Ill.Dec. 754, 814 N.E.2d 980 (2004). See also, *State v. Koenig,* 666 N.W.2d 366, 372 (Minn.2003) (acknowledging that Minn.Stat. § 609.352 (2002) defines solicit as "commanding, entreating, or attempting to persuade a specific person"). Similarly, Ohio Pattern Jury Instructions define solicit as: "to entice, urge, lure or ask." *State v. Swann,* 142 Ohio App.3d 88, 753 N.E.2d 984, 985 (2001), quoting, 4 Ohio Jury Instructions (1997) 199, § 507.24. The district court's definition of "solicit" in this case is consistent with the definitions articulated in other jurisdictions.

■ [¶ 22] Moreover, Mr. Blakeman offered a proposed jury instruction defining "solicit" which was remarkably similar to the instruction given by the district court. The defense's proposed instruction stated:

"Solicit" means (1) to ask to seek earnestly or pleadingly; (2) to tempt or to entice someone to do wrong; (3) to approach for some immoral purpose as a prostitute does.

Mr. Blakeman cited to Webster's New World College Dictionary as the source for his proposed instruction. The only difference between Mr. Blakeman's proposed instruction and the instruction actually given by the district court was the inclusion of the phrase "as a prostitute does" at the end of the defense instruction. Obviously, under the circumstances presented here, that phrase would have been inappropriate. By giving the remainder of the instruction, however, the district court essentially complied with Mr. Blakeman's request. "[A] party does not get to complain on appeal of errors which he himself induced or provoked the court or

the opposite party to commit." *Hughes v. State*, 2003 WY 35, ¶ 22, 65 P.3d 378, ¶ 22 (Wyo.2003). See also, *Vanvorst v. State*, 1 P.3d 1223, 1229 (Wyo.2000). We, therefore, conclude that the district court did not commit any error, much less plain error, in instructing the jury on the definition of solicit.

### 3. Constitutionality of Statute

[¶ 23]   Mr. Blakeman maintains that § 14-3-104 violates due process of law because it is vague and does not provide fair notice of the prohibited conduct.  He claims that the statute is vague on its face because it infringes upon constitutionally protected speech and it does not define solicit.  Mr. Blakeman also argues that the statute is unconstitutionally vague as applied to him in this case.

[¶ 24]   In reviewing a claim that a statute is unconstitutional, we start with a strong presumption that all statutes are constitutional.  Any doubt must be resolved in favor of a finding of constitutionality.  *Alcalde v. State*, 2003 WY 99, ¶ 15, 74 P.3d 1253, ¶ 15 (Wyo.2003).  A challenge to a statute as being unconstitutionally vague on its face is available only in two instances: "(1) when the statute reaches a substantial amount of constitutionally protected conduct; and (2) when the statute is shown to specify no standard of conduct at all." *Alcalde*, ¶ 13, quoting, *Ochoa v. State*, 848 P.2d 1359, 1363 (Wyo.1993).  See also, *Statezny*, 2001 WY 22, ¶ 12, 18 P.3d 641, ¶ 12 (Wyo.2001).  With regard to "as applied" challenges, we are governed by the following standard:

> In making this determination we must decide whether the statute provides sufficient notice to a person of ordinary intelligence that appellant's conduct was illegal and whether the facts of the case demonstrate arbitrary and discriminatory enforcement.  When evaluating a statute to determine whether it provides sufficient notice, we must again consider not only the statutory language but also any prior court decisions which have placed a limiting construction on the statute or have applied it to specific conduct.

*Griego v. State*, 761 P.2d 973, 976 (Wyo.1988). See also, *Alcalde*, ¶ 13.

[¶ 25]   Mr. Blakeman did not challenge the constitutionality of the statute in the district court.  Generally, in the absence of fundamental or plain error, we do not address claims that were not presented below.  See e.g., *Statezny*, ¶ 11; *Britton v. State*, 976 P.2d 669, 671 (Wyo.1999).  Of course, a claim that a statute is unconstitutionally vague treads in the area of fundamental error.  See *Rutti v. State*, 2004 WY 133, 100 P.3d 394 (Wyo.2004).  The fact that an appellant raises a constitutional issue does not, however, relieve him of the responsibility of sufficiently briefing the issue by presenting pertinent authority and cogent argument in favor of his position. *See, Statezny*, ¶ 11.

[¶ 26]   Mr. Blakeman recites the general law pertaining to vagueness challenges and presents a rambling argument, claiming the failure of the legislature to statutorily define solicit renders the statute invalid.  He fails, however, to present cogent argument or pertinent authority to support his claim that this particular statute provides no standard of conduct at all.  The term "solicit", in one form or another is used in numerous Wyoming statutes without being separately defined.  See e.g., Wyo. Stat. Ann. § 6-5-102 (LexisNexis 2003) (bribery); Wyo. Stat. Ann. § 6-5-103 (LexisNexis 2003) (offenses against public administration); Wyo. Stat. Ann. § 6-5-302 (LexisNexis 2003) (solicitation of perjury); Wyo. Stat. Ann. § 6-6-104 (LexisNexis 2003) (unlawful automated telephone solicitation).  Moreover, as is clear from our discussion of the jury instruction issue, the plain meaning of the term is clear from its dictionary definitions and is routinely used by other jurisdictions.

[¶ 27]   Mr. Blakeman also argues that the statute reaches a substantial amount of constitutionally protected speech, but he does not present any authority for his assertion that requesting sexual activities from a minor amounts to constitutionally protected speech.  We, therefore, decline to further address his argument that the solicitation statute is unconstitutionally vague.  *Davis v. State*, 859 P.2d 89, 94-95 (Wyo.1993).

### 4.  Ineffective Assistance of Counsel

[¶ 28]   Mr. Blakeman claims he did not receive effective assistance from his trial

attorney. He maintains that his trial counsel's performance was deficient because he failed to demand that the State give notice of its intention to offer evidence of other bad acts pursuant to Wyo. R. Evid. 404(b), failed to object to EG's testimony about the telephone conversations she had with Mr. Blakeman on the evening of July 27, 2002, as being improper "other bad acts" evidence, and made comments in his closing argument which indicated that he was contemptuous of Mr. Blakeman's conduct with LN.

[¶ 29] A criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See also, *Dickeson v. State*, 843 P.2d 606, 609 (Wyo.1992). In order to show ineffective assistance of counsel, the "appellant must make the dual showings that his counsel's performance was defective and that the deficient performance prejudiced his defense." *Dudley v. State*, 951 P.2d 1176, 1181 (Wyo.1998). See also, *Sincock v. State*, 2003 WY 115, ¶ 34, 76 P.3d 323, ¶ 34 (Wyo.2003).

> When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. The reviewing court should indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment.

*Jackson v. State*, 902 P.2d 1292, 1295 (Wyo. 1995) (citations omitted). See also, *Bilderback v. State*, 13 P.3d 249, 251 n. 1 (Wyo. 2000).

[¶ 30] Mr. Blakeman's first two criticisms of his trial counsel's performance are valid only if EG's testimony about her telephone conversations with Mr. Blakeman amounted to other bad acts evidence which should have been excluded from the trial evidence under W.R.E. 404(b), which provides:

> (b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a

person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[¶ 31] In *Howard v. State*, 2002 WY 40, ¶ 17, 42 P.3d 483, ¶ 17 (Wyo.2002), we reaffirmed that the test set forth in *Huddleston v. United States*, 485 U.S. 681, 691, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), is used in Wyoming to determine the admissibility of other bad acts evidence pursuant to W.R.E. 404(b). Under *Huddleston*, there are four criteria for testing the admissibility of other bad acts evidence: "(1) The evidence is offered for a proper purpose; (2) The evidence is relevant; (3) The probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and, (4) Upon request, the trial court instructs the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted." *Howard*, ¶ 17.

[¶ 32] The first two *Huddleston* factors, which address the purpose and relevancy of EG's testimony, can be considered together. The exceptions to the exclusionary rule specifically articulated in W.R.E. 404(b) include: "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." The exceptions expressly stated in W.R.E. 404(b) are not, however, exclusive. This Court has also recognized the "course of conduct" exception to the exclusionary rule. *Crozier v. State*, 723 P.2d 42, 49 (Wyo.1986). See also, *Eatherton v. State*, 810 P.2d 93, 100 (Wyo. 1991). Under that exception, evidence of other criminal activity is admissible if it "forms part of the history of the event or serves to enhance the natural development of the facts." *Crozier*, 723 P.2d at 49, quoting *Commonwealth v. Evans*, 343 Pa.Super. 118, 494 A.2d 383, 390 (1985).

[¶ 33] EG's testimony about Mr. Blakeman's telephone conversation with her falls within the course of conduct exception because it was necessary to provide the jury with a full account of the parties' activities on the day of the occurrence. The evidence

explained that AG went to meet Mr. Blakeman to collect the money he owed her for babysitting. Furthermore, EG's testimony about Mr. Blakeman's sexual comments were properly admitted to show that Mr. Blakeman intended to seek sexual activity with the adolescent girls. The State was charged with proving that Mr. Blakeman solicited and/or knowingly encouraged LN to participate in sexual intrusion. EG's testimony was, obviously, relevant to show that Mr. Blakeman's comments to LN were not simply hypothetical discussions, but were, instead, part of his plan to convince her to have sexual contact with him.

[¶ 34] Having determined that EG's testimony was offered for a proper purpose under W.R.E. 404(b) and that the evidence was relevant to the case, we must next balance the probative value of the evidence against its prejudicial value. EG's testimony was, obviously, prejudicial to Mr. Blakeman.

[¶ 35] Nevertheless, as discussed above, EG's testimony was particularly pertinent to explaining the timeline of the day and the circumstances under which the girls ended up in Mr. Blakeman's company. EG's testimony was also probative of the issue of Mr. Blakeman's intentions in persuading AG and LN to go behind the grocery store. The evidence negated the inference that his sexual comments were simply innocent bantering or that his intentions in giving LN a backrub were innocent. Thus, we must conclude that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice to Mr. Blakeman. Under the *Huddleston* criteria, EG's testimony was not excludable from the trial evidence under W.R.E. 404(b). Mr. Blakeman's trial attorney did not, therefore, provide ineffective assistance of counsel by failing to pursue a futile effort to have the evidence excluded.

[¶ 36] Mr. Blakeman also complains that his trial counsel was deficient because, in closing argument, he described Mr. Blakeman's conduct as "gross," "rude," "immature," and "inappropriate." When viewed in the context of the entire defense closing argument, it is obvious that Mr. Blakeman's attorney made a tactical decision to argue that Mr. Blakeman's comments, although in-

appropriate, did not amount to criminal behavior. We do not fault trial counsel for making those remarks. This Court will not second guess the tactical decisions made by trial attorneys in the course of a courtroom battle. See e.g., *Daniel v. State*, 2003 WY 132, 78 P.3d 205 (Wyo.2003); *Sincock*, ¶ 53; *Barkell v. State*, 2002 WY 153, 55 P.3d 1239 (Wyo.2002).

[¶ 37] Mr. Blakeman has not demonstrated that his counsel's performance was deficient. Consequently, we reject his claim that he was denied his constitutional right to effective assistance of counsel.

[¶ 38] Affirmed.