2005 WY 118

**The Matter of the ADOPTION OF CF, a minor.**

**TF, Appellant (Respondent),**

**v.**

**State of Wyoming, Department of Family Services, Appellee (Petitioner),**

**and**

**MJW and JMW, Appellees (Petitioners).**

**No. C–04–13.**

Supreme Court of Wyoming.

Sept. 16, 2005.

994

Representing Appellant: Gay Woodhouse and Lori Brand of Gay Woodhouse Law Office, P.C., Cheyenne, Wyoming. Argument by Ms. Brand.

Representing Appellee, State of Wyoming, Department of Family Services: Patrick J. Crank, Attorney General; Robin Sessions Cooley, Deputy Attorney General; Dan S. Wilde, Senior Assistant Attorney General; and Nancy Conrad, Assistant Attorney General. Argument by Ms. Conrad.

Representing Appellees MJW and JMW: D. Stephen Melchior, Cheyenne, Wyoming and Megan L. Hayes, Laramie, Wyoming. Argument by Ms. Hayes.

Representing Guardian ad Litem: John M. Burman and Cara B. Chambers, U.W. Legal Services, Laramie, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

KITE, Justice.

[¶ 1] Appellees MJW and JMW (Foster Parents) filed a petition with the district court to adopt CF. CF's biological mother, TF (Mother), objected to the adoption, and her father (Grandfather) sought custody of, and/or visitation with CF. The district court approved Foster Parents' petition to adopt CF and denied Grandfather's request for visitation. Mother and Grandfather appealed from the district court's order, but Grandfather dismissed his appeal prior to filing a brief with this Court.

[¶ 2] Mother asserts the district court committed numerous errors in this case, including in its resolution of Grandfather's claims. We find clear and convincing evidence to support the district court's decision to grant Foster Parents' petition to adopt CF without Mother's consent. Furthermore, we conclude that Mother does not have standing to raise issues pertaining to Grandfather's rights. We, therefore, affirm the final decree of adoption.

## ISSUES

[¶ 3] Mother presents a long list of issues on appeal:

I. Did the State of Wyoming Department of Family Services violate appellant birth family's fundamental rights to familial association, substantive and procedural due process and federal law by urging and subsidizing petitioners' suit for adoption without consent rather than proceeding with recommended grandparent placement of CF[?]

II. Did the district court err as a matter of law by applying the wrong standard of proof to petitioners' claim that mother had willfully failed to pay child support pursuant to Wyo. Stat. § 1–22–110(a)(iv)[?]

III. Did the district court err as a matter of law in concluding that the petitioners had satisfied their burden of proof that mother had willfully permitted her child to be maintained by the department without contributing

to support pursuant to Wyo. Stat. § 1–22–110(a)(vi)[?]

IV. Did the district court err as a matter of law when it found that clear and convincing evidence had been submitted regarding the adjudication of neglect of mother in this case pursuant to Wyo. Stat. § 1–22–110(a)(vii)[?]

V. Did the district court err as a matter of law in ignoring the recognized fundamental right of association of grandparents and grandchildren thereby denying grandparent visitation and custody to mother's father as requested by petition filed prior to petition for adoption without consent[?]

VI. Did the district court err in finding that it was in the child's best interests to terminate contact with birth family by granting adoption without consent to nonrelative caregivers under these circumstances[?]

VII. Did the district court err by making no explicit findings of fact in connection with grandfather's motion for stay pursuant to the *Soldiers' and Sailors' Civil Relief Act of 1940,* et seq., 50 U.S.C. § 501 et seq.[?]

VIII. Do the cumulative errors committed by the district court necessitate reversal of the final decree of adoption issued in this case[?]

The Department of Family Services (DFS) presents the following issues:

I. Whether appellant has standing to appeal alleged errors or violations of the law on the grandfather's behalf?

II. Whether CF's placement in foster care and the Department of Family Services' subsidy of MJW and JMW's petition to adopt CF without TF's consent, violated appellant's fundamental rights to familial association, substantive and procedural due process, federal law or the Department of Family Services' rules and regulations?

III. Whether the district court abused its discretion when it granted appellee's adoption without consent pursuant to Wyo. Stat. Ann. § 1–22–101?

Foster Parents present the following issues:

1. Whether the birth mother/appellant has waived the right to raise on appeal any questions regarding the propriety of the state of Wyoming's agreement to subsidize the foster parents'/appellees' costs incurred in this adoption proceeding because of appellant's failure to object to such subsidy agreement below or to show how such agreement affected the trial court's decision to grant the petition for adoption.

2. Whether there was sufficient evidence for the district court to conclude that the foster parents/appellees had proven, by clear and convincing evidence, the existence of at least one of the statutory factors necessary to prevail on their petition for adoption.

3. Whether the trial court abused its discretion in concluding that it was in CF's best interests to grant the foster parents'/appellees' petition for adoption.

4. Whether the trial court properly denied the grandfather's emergency motion to stay the trial proceedings pursuant to the Service Members Civil Relief Act, 50 Appx. U.S.C. § 521.

5. Whether the doctrine of cumulative error applies to this case.

The Guardian ad Litem raises the following two issues:

*ISSUE I:*

What is the role of the guardian ad litem in an adoption proceeding?

*ISSUE II:*

Is it in CF's best interest to seek resolution and finality in the litigation concerning his placement?

## FACTS

[¶ 4] CF, who has numerous physical and emotional problems, was born in Georgia on July 10, 1999. Mother and CF subsequently moved to Wyoming, and on June 14, 2001, Mother took CF to the Laramie County DFS

office. She stated that she could not care for CF and wanted him placed in "the State's custody." DFS incorrectly informed Mother that she could not voluntarily place CF in foster care. Consequently, she agreed to allow law enforcement to take him into protective custody, and the district attorney filed a neglect petition against Mother. CF was placed in Foster Parents' home, where he has resided since.

[¶ 5] DFS and Mother entered into a consent decree in which she agreed to cooperate with DFS to develop and follow a case plan. DFS petitioned to revoke the consent decree because Mother did not comply with the terms of her case plan. Mother admitted the allegations of the neglect petition, and the district court entered an order of final disposition, finding CF was neglected. Mother did not appeal the order of final disposition.

[¶ 6] Grandfather, who is Mother's adoptive father, contacted DFS and stated that he would like for CF to be placed with him at his home in Iowa. DFS arranged for a study of Grandfather's home, and Grandfather was approved as a placement option. DFS recommended several times throughout the juvenile proceeding that CF be placed with Grandfather; however, Mother strongly objected to CF being placed with Grandfather. Consequently, CF remained with Foster Parents.

[¶ 7] In July 2002, Grandfather traveled to Wyoming and spent three days with CF. After the visit, CF's behavior in the foster home regressed. DFS concluded that CF had bonded with the foster family and a change in placement would be detrimental to his welfare. DFS, therefore, recommended that CF be placed permanently with Foster Parents and agreed to subsidize Foster Parents' efforts to adopt CF.

[¶ 8] In April 2003, Foster Parents petitioned to adopt CF without the parents' consent in accordance with Wyo. Stat. Ann. § 1–22–110.[1] (LexisNexis 2005). The biological father did not appear, and, consequently, the district court terminated his parental rights

in accordance with § 1–22–110(a)(i). Mother, however, contested the adoption, and Grandfather filed an action seeking grandparent visitation rights. The district court allowed Grandfather to intervene in the adoption proceeding and consolidated it with Grandfather's visitation action and the juvenile matter.

[¶ 9] The district court held a trial on the consolidated matters on October 30, 2003, and December 15 and 16, 2003. On December 12, 2003, Grandfather filed an emergency request for a stay of the trial because he had been deployed to active military duty through the National Guard and could not attend the trial in person. The district court denied the motion for a stay, but permitted Grandfather's attorney to represent him in person at the trial and allowed Grandfather to testify by telephone. In the end, the district court granted Foster Parents' petition to adopt CF and terminated Mother's parental rights. The district court also denied Grandfather's request for visitation rights. On March 25, 2004, the district court entered the Final Decree of Adoption. Mother and Grandfather filed a joint notice of appeal; however, Grandfather subsequently dismissed his appeal.

## DISCUSSION

### A. Adoption Without Parental Consent Under § 1–22–110

[¶ 10] The district court has the power and discretion to grant an adoption without parental consent, provided all the statutory elements are satisfied. *In the Matter of the Adoption of SMR, MVC v. MB*, 982 P.2d 1246, 1248 (Wyo.1999). This Court reviews adoption decrees by applying the abuse of discretion standard. *In the Matter of Adoption of TLC, TOC v. TND*, 2002 WY 76, ¶ 9, 46 P.3d 863, 867–68 (Wyo.2002).

"The power to grant or deny a petition for adoption is within the discretion of the trial court. *Matter of Adoption of BGH*, 930 P.2d 371, 377 (Wyo.1996); *Matter of Adop-*

1. Foster Parents' original petition sought termination of parental rights pursuant to Wyo. Stat. Ann. § 14–2–309 (LexisNexis 2005) and adoption of CF pursuant to § 1–22–110. They subsequent-

ly amended their petition by deleting the action under Title 14. Consequently, we are concerned only with the adoption provisions of Title 1.

*tion of GSD,* 716 P.2d 984, 988 (Wyo.1986). 'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria.' *Mintle v. Mintle,* 764 P.2d 255, 257 (Wyo.1988) (quoting *Martin v. State,* 720 P.2d 894, 897 (Wyo. 1986)). 'In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably have concluded as it did.' *Matter of Adoption of BGH,* 930 P.2d at 377–78 (quoting *Matter of Adoption of CCT,* 640 P.2d 73, 76 (Wyo.1982)). In the context of alleged abuse of discretion, the assessment of the circumstances in the case

> is tantamount to an evaluation of whether the evidence is sufficient to support the decision of the district court. In review of the evidence, we accept the successful party's submissions, granting them every favorable inference fairly to be drawn and leaving out of consideration conflicting evidence presented by the unsuccessful party." (Quoting *Basolo v. Basolo,* 907 P.2d 348, 353 (Wyo. 1995).)

*Id.*

[¶ 11] We are mindful that an adoption results in the termination of the familial rights of the biological parents. *SMR,* 982 P.2d at 1249; *In the Matter of the Adoption of CJH, SLH v. CST,* 778 P.2d 124, 126 (Wyo.1989). The right to associate with one's children is a fundamental right protected by the Wyoming and United States Constitutions. *TLC,* ¶ 10. See also, *RS v. Department of Family Services (In re: KLS),* 2004 WY 87, ¶ 11, 94 P.3d 1025, 1027–28 (Wyo.2004); *Lassiter v. Department of Social Services of Durham County, North Carolina,* 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). In recognition of the importance of this fundamental right, we have stated that "adoption statutes are strictly construed when the proceeding is against a non-consenting parent, and every reasonable intendment is made in favor of that parent's claims." *TLC,* ¶ 10. "Moreover, the party requesting adoption bears the burden of proving the existence of at least one of the statutory factors by clear and convincing evidence." *Id.,* ¶ 11. Clear and convincing evidence is defined as "that kind of proof which would persuade a trier of fact that the truth of the contention is highly probable." *Hutchins v. Payless Auto Sales, Inc.,* 2002 WY 8, ¶ 19, 38 P.3d 1057, 1063 (Wyo.2002), quoting *MacGuire v. Harriscope Broadcasting Co.,* 612 P.2d 830, 839 (Wyo.1980).

[¶ 12] Section 1–22–110 governs when adoption may be granted without the parents' consent. That statute states, in pertinent part:

> (a) In addition to the exceptions contained in W.S. 1–22–108, the adoption of a child may be ordered without the written consent of a parent or the putative father if the court finds that the nonconsenting parent or putative father is unknown and that the putative father has not registered under W.S. 1–22–117 and the affidavit required by W.S. 1–22–109(a)(iv) has been filed with the petition to adopt or if the court finds that the putative father or the nonconsenting parent or parents have:

> (i) Been given notice of the hearing as provided in W.S. 1–22–107 and has failed to answer or appear at the hearing; or
> * * *

> (iii) Willfully abandoned or deserted the child; or

> (iv) Willfully failed to contribute to the support of the child for a period of one (1) year immediately prior to the filing of the petition to adopt and has failed to bring the support obligation current within sixty (60) days after service of the petition to adopt; or

> (v) Willfully permitted the child to be maintained in or by a public or private institution or by the department of family services for a period of one (1) year immediately prior to the filing of the petition without substantially contributing to the support of the child; or
> * * *

> (vii) Been adjudged by a court to be guilty of cruelty, abuse, neglect or mistreatment of the child[.]

[¶ 13] In their petition, Foster Parents asserted several bases under § 1–22–110(a) for their adoption of CF without Mother's consent, including: (1) subsection (iii)—willful

abandonment or desertion of the child; (2) subsection (iv)—willful failure to contribute to the support of the child for a period of one year immediately prior to the filing of the adoption petition and the failure to bring the support obligation current within 60 days after service of the petition; (3) subsection (v)—willfully permitting the child to be maintained by the Department of Family Services for a period of one year immediately prior to the filing of the petition without substantially contributing to the support of the child; and (4) subsection (vii)—being adjudged guilty of neglect of the child. The district court found that the evidence did not support a finding that Mother abandoned or deserted CF in accordance with § 1–22–110(a)(iii), but concluded that the adoption could be granted without Mother's consent on the basis of subsections (iv), (v) and (vii). We will examine the evidence pertaining to each of these provisions in turn.

[¶ 14] Under § 1–22–110(a)(iv), Foster Parents were required to establish that Mother willfully failed to provide support for CF for a period of one year prior to the filing of the adoption petition and failed to bring the support obligation current within 60 days after service of the petition. The district court concluded "[t]here is a preponderance of the evidence that she willfully failed to contribute to support." Relying on that statement, Mother argues that the district court applied the wrong standard of proof.

[¶ 15] We are troubled about the implication that the district court used the preponderance of the evidence standard of proof in making the finding that Mother willfully failed to contribute to CF's support. The right to associate with one's family is a fundamental right protected by the Wyoming and United States Constitutions. *Michael v. Hertzler*, 900 P.2d 1144, 1147 (Wyo.1995). Wyoming law is clear that, when a biological parent objects to an adoption, at least one statutory factor for adoption must be established by clear and convincing evidence. *TLC*, ¶¶ 11–13. Similarly, the United States Supreme Court has stated that, in a proceeding which may result in termination of parental rights, the preponderance of the evidence

standard of proof is inconsistent with due process. *Santosky v. Kramer*, 455 U.S. 745, 758, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Instead, due process requires the applicable statutory sections be satisfied by clear and convincing evidence. *Id.* See also, *TLC*, ¶ 13.

[¶ 16] Nevertheless, after reviewing the entire record, we are convinced that the district court simply made a misstatement when it referred to the preponderance of the evidence standard in its decision letter. In other parts of the decision letter, the district court plainly refers to the correct standard of proof. In addition, any error made by the district court in applying the wrong standard of proof to this factor would be harmless under the circumstances of this case. Under § 1–22–110(a), Foster Parents are only required to prove one of the factors by clear and convincing evidence, and the district court unquestionably applied the clear and convincing standard in analyzing Foster Parents' other two bases for approval of the adoption without Mother's consent.

[¶ 17] Furthermore, we are able to discern clear and convincing evidence to support the finding that Mother willfully failed to contribute to CF's support. Early in the juvenile proceeding, the district court ordered Mother to pay child support. The evidence is undisputed that she did not comply with this requirement and during the one year preceding the filing of the adoption petition, did not pay any child support whatsoever. Mother did make a sizeable child support payment on August 25, 2003, and brought her child support obligation current in October 2003. These payments were, however, made after the expiration of the 60 day period set out in the statute. Consequently, the evidence clearly establishes that Mother did not satisfy her child support obligation.

[¶ 18] Mother claims, however, that the district court erred by finding that her failure to make the child support payments was willful. In the context of the nonconsensual adoption statute, the "term 'willfully' means 'intentionally, knowingly, purposely, voluntarily, consciously, deliberately, and without justifiable excuse, as distinguished from carelessly, inadvertently, ac-

cidentally, negligently, heedlessly or thoughtlessly.'" *SMR*, 982 P.2d at 1249 quoting, *Matter of Adoption of CJH, SLH v. CST*, 778 P.2d 124 (Wyo.1989) and *In the Matter of the Adoption of CCT, ALT v. DWD*, 640 P.2d 73 (Wyo.1982). If the parent lacks the means to make contributions, then the failure to make child support payments may be considered not to be willful. See e.g., *TLC*, ¶ 28. A parent must, however "always pay child support according to his or her financial ability." *Id.*

[¶ 19] The evidence concerning Mother's efforts (or lack thereof) to meet her child support obligation was not materially controverted. Mother testified that she was aware of her child support obligation. Although the record shows that her employment was not continual and her jobs paid relatively low wages, the fact that she was employed indicates that she had some financial ability to pay child support. Still, she did not make the effort to pay, or even offer to pay, *any* child support until after the statutory deadline had already expired. In August of 2003, Mother procured money from her grandmother and paid a sizeable amount toward her child support arrearage. Mother offered no justification as to why, prior to August 2003, she did not make any effort to pay child support from her wages or attempt to obtain money from her grandmother to pay her child support obligation. In light of the uncontested nature of the evidence in this case, we are confident that clear and convincing evidence supported the district court's determination that Mother willfully failed to pay child support during the year prior to the filing of the petition. The district court did not abuse its discretion by concluding that Mother's consent to the adoption was not required pursuant to § 1–22–110(a)(iv).

[¶ 20] The district court also concluded that Foster Parents' petition for adoption of CF without Mother's consent should be granted pursuant to § 1–22–110(a)(v), because she willfully permitted CF to be maintained by the Department of Family Services for a period of one year immediately prior to the filing of the petition without substantially contributing to CF's support. We have al-

ready concluded that clear and convincing evidence was presented to establish that Mother did not contribute to CF's support. Our focus, therefore, is on whether she willfully permitted CF to be maintained by DFS for the year immediately preceding the filing of the petition.

[¶ 21] After contacting DFS about her inability to care for the child, Mother voluntarily entered into a consent decree which required her to cooperate with DFS in developing and following a case plan. Under the terms of the case plan, Mother agreed to forego drugs and alcohol, complete a drug and alcohol evaluation, and submit to random urinalysis tests. She was also required to: maintain employment, provide a safe and secure home environment, attend and complete a parenting class and counseling, and regularly visit CF in accordance with an established schedule. The goal of the case plan was family reunification; however, the plan also expressly stated that if Mother did not meet its requirements, her parental rights could be terminated.

[¶ 22] Mother failed, in nearly every respect, to comply with the mandates of the case plan. On numerous occasions she refused to submit to DFS' requests that she take urinalysis tests. When she finally did submit to the tests, she tested positive for methamphetamine and amphetamine.

[¶ 23] Mother's only attempt to comply with the parenting class and counseling requirement of her case plan was her attendance at a single parenting class in January of 2002.. She also missed numerous scheduled visits with CF and did not consistently keep in touch with DFS.

[¶ 24] Mother's home environment was decidedly unsafe. She did not consistently maintain a residence and occasionally refused to provide DFS with information about where she was living. Her live-in boyfriend brought drugs into the home. There was also evidence which indicated that Mother's relationship with her boyfriend was violent, and Mother even admitted that the boyfriend had hit CF in the past. As a result of her failure to follow the case plan, DFS petitioned the district court to revoke the con-

sent decree and the district court declared CF to be neglected.

[¶ 25] In *Matter of Adoption of KJD, MTM v. LD*, 2002 WY 26, ¶¶ 41–43, 41 P.3d 522, 530–31 (Wyo.2002), we concluded that an adoption should be granted over the objection of the father on the basis that he had permitted the child to be maintained by DFS without substantial support for more than one year. Our reasoning in *KJD* is applicable here:

> The father did not cooperate with DFS or comply with its case plans for reunification with his daughter. He was well aware that his daughter could be returned to him if he would cooperate and comply with the case plans developed by DFS, yet he willfully chose not to do so.

*Id.*, ¶ 41. Similarly, when Mother refused to meet the requirements of the case plan, she failed to achieve reunification with CF. Mother, therefore, willfully allowed CF to remain in DFS custody.

[¶ 26] Mother contests this finding by asserting that DFS should have placed CF with Grandfather rather than Foster Parents. She claims that DFS' failure to place CF with Grandfather was a violation of her birth family's fundamental rights to associate with family and federal law. We agree that, in general, preference should be given to family placements. The Wyoming and United States Constitutions protect the fundamental rights of family members to associate with one another. In addition, federal law requires that, in order to be eligible for financial assistance from the federal government, a state must adopt a plan for foster care and adoption assistance which provides that:

> the State shall consider giving preference to an adult relative over a non-related caregiver when determining a placement for a child, provided that the relative caregiver meets all relevant State child protection standards.

42 U.S.C. § 671(a)(19). This requirement helps avoid the situation where a child becomes overly attached to a foster family which is not biologically related to him. See *Smith v. Organization of Foster Families for Equality & Reform*, 431 U.S. 816, 844–45, 97

S.Ct. 2094, 53 L.Ed.2d 14 (1977) (discussing the natural tendency of children and foster families to emotionally bond when the child is placed long term in the foster home, especially when the placement is made when the child is very young).

[¶ 27] Nevertheless, under the circumstances of this case, Mother's argument that DFS violated the law by failing to place CF with Grandfather rather than Foster Parents is disingenuous. Mother conveniently ignores her own actions during the time CF was in foster care. Grandfather was approved as a placement option, and DFS repeatedly recommended that CF be placed with Grandfather. Mother, however, objected to that placement and specifically requested that Foster Parents continue to care for CF. Finally, on March 21, 2003, after CF had been living with the foster family for more than a year and a half and just a few days before Foster Parents filed their adoption petition, Mother indicated that she was willing to allow CF to be placed with Grandfather. Under these circumstances, Mother is judicially estopped from complaining about DFS' failure to place CF with Grandfather. "[A] party does not get to complain on appeal of errors which he himself induced or provoked the court or the opposite party to commit." *Blakeman v. State*, 2004 WY 139, ¶ 22, 100 P.3d 1229, 1235–36 (Wyo.2004) quoting, *Hughes v. State*, 2003 WY 35, ¶ 22, 65 P.3d 378, 384–85 (Wyo.2003).

[¶ 28] Moreover, the record indicates that physical placement of CF with Grandfather would not have removed the child from DFS' legal custody. The proposed role of Grandfather was in the position of relative foster care provider. Thus, even if CF had been physically placed with Grandfather, CF would have still been "maintained" in the legal custody of DFS. The district court did not abuse its discretion by finding, under § 1–22–110(a)(v), that Mother had willfully permitted CF to be maintained by DFS for the year immediately preceding the filing of the petition without substantially contributing to his support.

[¶ 29] The district court also found that Mother's consent to the adoption was

not required under § 1–22–110(a)(vii) because she had been adjudged guilty of neglecting CF. Mother disputes the district court's conclusion by challenging the original order adjudging her guilty of neglect. She claims that DFS improperly advised her that she could not voluntarily place CF in foster care and told her that, in order to obtain DFS services, she must agree to have a charge of neglect filed against her.

[¶ 30] DFS concedes it provided erroneous information to Mother when she initially brought CF into the office, but argues that it is too late for Mother to challenge the validity of the neglect order. We agree. Regardless of the errors or mistakes DFS may have made in the juvenile proceeding, the reality is Mother admitted the neglect allegations and the district court entered an Order of Final Disposition on September 19, 2002, concluding that CF was a neglected child. Mother did not object to, or appeal from, that final disposition order finding her guilty of neglect.

To invoke appellate jurisdiction, appeals must be filed no later than thirty days after the district court enters its final order. W.R.A.P. 2.01. The timely filing of a notice of appeal is jurisdictional. "A late filing of an appeal results in an incurable jurisdictional defect, leaving this Court with no authority to resolve the case." *BW v. State*, 12 P.3d 675, 677 (Wyo.2000) quoting *Holmquist v. State*, 902 P.2d 217 (Wyo.1995) (citation omitted). Mother may not challenge the validity of the neglect order in this adoption proceeding. Thus, the district court did not abuse its discretion by finding that Mother's consent to the adoption was not required under § 1–22–110(a)(vii), because she had been adjudged guilty of neglecting CF.

[¶ 31] Foster Parents were required to prove just one of the bases under § 1–22–110(a) in order for the district court to grant their petition to adopt CF without Mother's consent. We conclude that they presented clear and convincing evidence to support each of the three statutory factors. The district court did not abuse its discretion by concluding that Mother's consent to CF's adoption was not required.

### B. Best Interests of the Child

[¶ 32] After finding that the adoption could be granted without Mother's consent, the district court was obligated to determine whether the adoption should be granted under Wyo. Stat. Ann. § 1–22–111 (LexisNexis 2005).[2] That statute permits the district court to enter a final adoption decree if it finds that the child has lived in the petitioner's home for six months and it is in the best interests and welfare of the child to grant the adoption.

[¶ 33] Mother argues that the district court erred by ruling that it was in CF's best interest to grant Foster Parents' adoption petition. Mother argues that it was not in CF's best interests to be adopted by Foster Parents because they smoke and CF is asthmatic. She also claims that the expert testimony established that CF should be placed with Grandfather rather than Foster Parents.

[¶ 34] Two experts testified at the trial. Lani Tolman is a highly experienced family

2. Section 1–22–111 states:

Decree; investigation; denial of adoption

(a) After the petition to adopt has been filed and a hearing held the court acting in the best interest and welfare of the child may make any of the following orders:

(i) Enter an interlocutory decree of adoption giving the care and custody of the child to the petitioners pending further order of the court;

(ii) Defer entry of an interlocutory decree of adoption and order the department of family services or a private licensed agency to investigate and report to the court the background of the child and of the petitioners, and the medical, social and psychological background and status of the consenting parent and putative father. After a written report of the investigation is filed, the court shall determine if the adoption by petitioners is in the best interest and welfare of the child and thereupon enter the appropriate order or decree;

(iii) Enter a final decree of adoption if the child has resided in the home of the petitioner for six (6) months; or

(iv) Deny the adoption if the court finds that the best interests and welfare of the child will be served by such denial.

(b) If the court denies the adoption it shall make an order for proper custody consistent with the best interest and welfare of the child.

therapist who completed a custody evaluation for DFS, which included meeting with CF, Foster Parents, and Grandfather. She recommended that CF be adopted by Foster Parents. Nancy Verrier is a psychotherapist with a master's decree in clinical psychology. She did not meet with any of the persons involved in this matter, but testified in general about adoptions. Ms. Verrier testified that adopted persons suffer emotional and psychological problems as a result of the severing of the genetic link with their biological relatives. She, therefore, recommended that CF be placed with Grandfather.

■ [¶ 35] The district court exhaustively discussed the evidence pertaining to CF's best interests in its findings of fact. It concluded that Ms. Tolman's opinion was more persuasive than Ms. Verrier's because she had actually met with the persons involved and completed a custody evaluation based upon the specific facts of the case. Furthermore, the district court found Ms. Verrier's conclusions about the importance of a genetic link to be problematic in the context of this case because Grandfather was not Mother's biological father and, consequently, had no genetic link to CF. The trial judge is in the best position to determine questions of credibility and to weigh and judge the evidence, including the expert evidence. See e.g., *Sowerwine v. Nielson*, 671 P.2d 295, 301 (Wyo.1983). The record supports the district court's conclusions about the experts in this case. The district court did not abuse its discretion in finding Ms. Tolman's opinion more persuasive than Ms. Verrier's.

■ [¶ 36] In addition, the district court also discussed, in its best interest analysis, the effect of removing CF from the foster home. At the time of the trial, CF had been living with the foster family for approximately two and one-half years. He was placed with Foster Parents when not quite two years old, and he had naturally developed a strong bond with the family.[3] In addition, the trial evidence showed that CF was fragile and suffered from numerous physical and

emotional problems. He had, however, made vast improvements while living with Foster Parents.

[¶ 37] On appeal, Mother places great emphasis on the fact that the district court's findings do not mention the evidence pertaining to Foster Parents' smoking and its effect upon CF's asthma. There was extensive evidence presented in this case, and in weighing this evidence, the district court obviously concluded that on the whole, the foster family was a proper permanent placement for CF. On this record, we do not fault the district court's decision and conclude that the district court did not abuse its discretion by finding it was in CF's best interests to be adopted by Foster Parents.

### C. Mother's Standing to Raise Errors on Behalf of Grandfather

[¶ 38] Mother challenges the district court's decisions on several matters pertaining to Grandfather, including: whether the district court erred by failing to make written findings when it denied Grandfather's motion to stay the trial; whether the district court erred by denying Grandfather's petition for visitation; and whether the district court violated Grandfather's fundamental rights to familial association. DFS claims that Mother does not have standing to assert these issues on Grandfather's behalf.

■ [¶ 39] "Standing is a legal concept designed to determine whether a party is sufficiently affected to insure that the court is presented with a justiciable controversy." *Pedro/Aspen, Ltd. v. Board of County Commissioners for Natrona County,* 2004 WY 84, ¶ 8, 94 P.3d 412, 415, quoting *Jolley v. State Loan and Investment Board,* 2002 WY 7, ¶ 6, 38 P.3d 1073, 1076 (Wyo.2002) (citations omitted).

> "The doctrine of standing is a jurisprudential rule of jurisdictional magnitude. At its most elementary level, the standing doctrine holds that a decision-making body should refrain from considering issues in

---

3. Mother also argues that the bond between Foster Parents and CF would not have developed if DFS had placed him with Grandfather early on in the proceedings. As we discussed earlier in

this decision, Mother is judicially estopped from asserting an error in this regard as she, herself, resisted CF's placement with Grandfather.

which the litigants have little or no interest in vigorously advocating. Accordingly, the doctrine of standing focuses upon whether a litigant is properly situated to assert an issue for judicial or quasi-judicial determination. A litigant is said to have standing when he has a 'personal stake in the outcome of the controversy.' This personal stake requirement has been described in Wyoming as a 'tangible interest' at stake. The tangible interest requirement guarantees that a litigant is sufficiently interested in a case to present a justiciable controversy."

*Id.*, ¶ 8, quoting *Jolley*, ¶ 6, which quoted, *Roe v. Board of County Commissioners, Campbell County*, 997 P.2d 1021, 1022–23 (Wyo.2000). See also, *McNeel v. McNeel*, 2005 WY 36, ¶ 16, 109 P.3d 510, 514 (Wyo. 2005).

[¶ 40] Mother claims that the court erred by failing to make written findings pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. § 501, *et. seq.* when it denied Grandfather's motion to stay the trial. Grandfather filed the motion to stay because he had been deployed by the National Guard and could not, therefore, attend the trial in person. We have reviewed the record on this matter and can find no indication that Mother had a personal stake in Grandfather's motion to stay or the district court's failure to make written findings when it denied that motion. Mother does not explain how she was prejudiced by the district court's denial of the motion to stay or its failure to make written findings justifying its denial. Clearly, this issue belongs to Grandfather, and he dismissed his appeal of the district court's decision. We do not have a party before us with a tangible legal interest in resolution of this issue; therefore, we decline to address the merits of this contention.

[¶ 41] In two related arguments, Mother claims that the district court erred by refusing to grant Grandfather's petition for visitation and violated his constitutional right to familial association. As we discussed earlier in this opinion, "the right to associate with one's family is a fundamental constitutional right." *Michael*, 900 P.2d at 1147. In recognition of this right, Wyo. Stat. Ann. § 20–7–101 (LexisNexis 2005) grants grandparents the right to petition for grandparent visitation in certain situations. Although Mother may be concerned about preserving a relationship between CF and her family, she does not have a personal interest in Grandfather's petition for visitation. Mother, therefore, does not have standing to claim that the district court erred by failing to grant Grandfather visitation with CF or to argue that Grandfather's right to familial association was deprived by the district court's order.[4]

### D. DFS' Subsidization of the Adoption Proceedings

[¶ 42] Mother argues that DFS violated its own rules and regulations when it agreed to subsidize Foster Parents' efforts to adopt CF. DFS Rules for Adoption, Section 7(a)(ii) states that DFS may subsidize a private adoption if the "child is free for adoption." Mother argues that CF was not free for adoption because she refused to consent to the Foster Parents' petition. Without question, administrative agencies must follow their own rules and regulations as they have the force and effect of law. *In re Interest of MN*, 2003 WY 135, ¶ 35, 78 P.3d 232, 239–40 (Wyo.2003). However, a person asserting a violation of an agency's rules or regulations must show how the violation resulted in a denial of due process or other fundamental rights. *Id.*

[¶ 43] Mother did not contest the subsidization agreement in the district court. We strongly adhere to the rule that we do not consider on appeal issues or arguments which were not addressed to the district court unless they are jurisdictional or fundamental in nature. *Amoco Production Co. v.*

---

4. Even if Grandfather had continued with his appeal, our recent decision in *Hede v. Gilstrap*, 2005 WY 24, 107 P.3d 158 (Wyo.2005) would have been fatal to his visitation claim. In *Hede*, we stated:

> [T]he adoption statutes unambiguously do not provide for biological grandparent intervention in adoption proceedings, nor for biological grandparent contesting of adoptions, nor for visitation after adoption.
>
> *Id.*, ¶ 26.

*Department of Revenue,* 2004 WY 89, ¶ 53, 94 P.3d 430, 449; *Hronek v. St. Joseph's Children's Home,* 866 P.2d 1305, 1309 (Wyo. 1994). Moreover, Mother does not explain how DFS' supposed breach of its rules violated her due process or fundamental rights. We will not, therefore, address Mother's claim that DFS improperly subsidized the Foster Parents' private adoption petition.

### E. Cumulative Error

[¶ 44] In her final issue, Mother asserts that the cumulative error doctrine, which applies in criminal matters, should be applied here. See e.g, *Strickland v. State,* 2004 WY 91, ¶ 53, 94 P.3d 1034, 1054 (Wyo. 2004). We decline to consider in this case whether the cumulative error doctrine applies in a civil context as the district court did not commit any errors.

### CONCLUSION

[¶ 45] The district court properly granted Foster Parents a final decree approving their adoption of CF. Foster Parents presented clear and convincing evidence under § 1–22–110(a) that the adoption could be approved without Mother's consent, and the district court did not abuse its discretion by finding that it was in CF's best interests to grant the adoption. Furthermore, we conclude that Mother does not have standing to raise issues pertaining to Grandfather's rights. We, therefore, affirm the final decree of adoption.